those upon which the plaintiff in the principal case relies. Schmidt v. Garfield Natl. Bank, 64 Hun, 298, 19 N. Y. Supp. 252, affirmed 138 N. Y. 631, 33 N. E. 1084; Robinson v. Chemical Natl. Bank, 86 N. Y. 404. We can add nothing to what was said in the Salen Case, and it would serve no useful purpose to reiterate what was written there.

The circumstances that plaintiff's employé was furnished with a rubber stamp does not in our opinion differentiate the cases. That was a mere matter of convenience. The point is that she was authorized to indorse the checks in plaintiff's name. Whether the legend attached above the signature was written or stamped was immaterial.

The determination of the Appellate Term must be reversed, and the judgment of the Municipal Court affirmed, with costs to the appellant in all courts. All concur.

---

(163 App. Div. 489)

GLENDENNING v. WESTERN UNION TELEGRAPH CO. (No. 6033.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. LANDLORD AND TENANT (§ 76*)—CONDITIONS AS TO ASSIGNMENTS—WHAT CONSTITUTES "ASSIGNMENT."

A lessee of premises upon which he conducted a restaurant sold a half interest in the business to O., and subsequently entered into an agreement with O. providing that O. should pay certain sums to the lessee and procure for him certain other sums on a mortgage by the lessee, and the lessee agreed to execute to O. an irrevocable power of attorney to conduct the business and a separate power of attorney to sell, assign, and sublet or otherwise dispose of any right which the lessee had in and to the lease upon condition that O. upon a disposition of the lease should pay the lessee a certain percentage of the amount received or of the net profits of the business. The lessee executed powers of attorney to O. to carry on the business and to "hold," sell, assign, or surrender any interest that the lessee might have in the lease; the powers stating that they were irrevocable. *Held*, that the agreement and powers of attorney amounted to an assignment of the lease within a covenant against assignments without the lessor's consent, since an assignment of a lease need not be in any particular form, and it is sufficient if the entire interest of the lessee passes without reversion.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 225–230; Dec. Dig. § 76.*

For other definitions, see Words and Phrases, vol. 1, pp. 566–571; vol. 8, p. 7584.]

2. PRINCIPAL AND AGENT (§ 43*)—REVOCATION OF AUTHORITY—POWER COUPLED WITH INTEREST.

The powers of attorney to O. were coupled with an interest and were not revocable by the death of the lessee.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 67–71; Dec. Dig. § 43.*]

Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Action by George O. Glendenning against the Western Union Telegraph Company. From a judgment in favor of plaintiff restraining defendant from interfering with plaintiff's possession of the store at 8, 10, and 12 Dey street and the storeroom in the basement thereunder

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

in the City of New York, defendant appeals, and from so much of the judgment as adjudges that plaintiff is entitled to recover compensatory damages only, plaintiff appeals.   Reversed, and complaint dismissed.

See, also, 161 App. Div. 930, 146 N. Y. Supp. 1092.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Rush Taggart, of New York City, for appellant.

George Gordon Battle, of New York City, for respondent.

HOTCHKISS, J.   [1, 2] On April 28, 1908, defendant leased to plaintiff, doing business as the Interborough Dairy Lunch Company, the premises in question for the term of ten years from the 1st day of May, 1908; the same to be used for restaurant purposes only.   The lease contained a covenant by the plaintiff against assigning, letting, or subletting all or any part of the premises, without the defendant's written consent to each and every such assignment or subletting, and for a violation of this covenant it was agreed that, at the option of the defendant, the lease should become void and the defendant might re-enter without notice.   Plaintiff entered into possession of the premises, equipped them for restaurant purposes, and conducted a restaurant therein until about March 1, 1911, when he sold the business to the Guilford Dairy Lunch Company and with the consent of the defendant sublet the premises to that company, which remained in possession until about October 1, 1911, when, being unable to continue the business, it surrendered to plaintiff, who thereupon reassumed possession of the premises, which remained closed for about two months, during which time one O'Brien advanced to the plaintiff about $4,000 which was used in refitting and rehabilitating the restaurant, which in December, 1911, was reopened and the business continued for the joint account of plaintiff and O'Brien.   On January 24, 1912, plaintiff and O'Brien executed an agreement which recited that O'Brien had advanced $4,000, for the use of the business, one-half of which plaintiff had agreed to repay, and had given plaintiff a note for some $1,741, representing arrears of rent left unpaid by the Guilford company, which had been paid by plaintiff.   By this agreement, plaintiff sold to O'Brien a half interest in the equipment of the restaurant, in the business itself and the profits thereof, and a "one-half interest in and to all sums that may be realized from the sale, surrender or cancellation of" the lease.   This agreement also provided that the first available profits of the business were to be applied to the payment of plaintiff's debt to defendant for one-half of his (defendant's) said advances.   In the same agreement, it is recited that:

"This is not to be taken as such an assignment of such lease as to give the party of the second part (sic O'Brien) the right to enter and take possession of the said premises."

Plaintiff and O'Brien continued to jointly conduct the business until August 28, 1912, when they entered into an agreement which recites that:

Plaintiff "has been conducting a restaurant at No. 10 Dey street in the city of New York for which the party of the second part (plaintiff) has contributed

large sums of money and has devoted his personal attention thereto during the past five months; and whereas said business is carried on in a store in the Western Union Telegraph building under a lease, which provides, amongst other things, that the lessee shall neither sublet the premises nor assign the said lease without the consent of the lessor, which has consented to a subletting to the Guilford Dairy Lunch Company, a corporation; and whereas the party of the second part desires to use certain sums of money, which the party of the first part (O'Brien) is willing to pay or procure for him."

After providing for certain moneys to be paid by O'Brien to plaintiff, and for certain other moneys which O'Brien agrees to procure for plaintiff on the security of a mortgage to be executed by plaintiff on certain real property belonging to him, and which latter moneys are to be used in paying certain debts of plaintiff, the agreement continues:

"Second. The party of the second part (plaintiff) shall forthwith * * * execute and deliver to him (O'Brien) an irrevocable power of attorney to conduct said business at No. 10 Dey street; and a separate power of attorney to · sell, assign and sublet or in any other way dispose of any right which the party of the second part may have in and to the said lease from the Western Union Telegraph Company to me; but this is upon the express condition that upon the disposition of said lease, if to the Western Union Telegraph Company itself, the party of the first part shall pay to the party of the second part fifteen per cent. (15%) of the amount received; and, if to any one else, an accounting shall be had and fifteen per cent. (15%) of the net profits, if any, of the entire business shall be paid to the party of the second part, the same in full settlement of the claims of the respective parties."

On the same day, plaintiff executed two powers of attorney which were recorded December 4, 1912. The first power appointed O'Brien plaintiff's "attorney irrevocable"—

"for me (plaintiff) and in my name to carry on the business now conducted in my name at No. 10 Dey street * * * and to do and perform all necessary acts in the execution and prosecution of the aforesaid business in as full and ample a manner as I might do if I were personally present," etc.

By the second power:

Plaintiff appointed O'Brien "my true and lawful attorney irrevocable for me and in my name in accordance with the terms of the following lease to hold, sell, assign or surrender any interest that I may have in any lease made to me by the Western Union Telegraph Company of the store at No. 10 Dey street, New York City, * * * and to execute in my name any instrument necessary to effectuate any such agreement."

After the delivery of these instruments, plaintiff ceased to take any actual part in conducting the business, which thereafter was conducted by O'Brien; the proceeds being received by him alone, and he paying the expenses. During the same period, O'Brien was in actual possession of the premises. The court found a variety of evidentiary facts, and some leaning to the inference that defendant knew of certain of the transactions between plaintiff and O'Brien, and expressed no objection thereto, and others negativing such a conclusion; but there is no finding that defendant ever waived or by any act estopped itself to enforce the covenant against assigning, nor did the evidence justify any such finding. On June 26, 1913, defendant served plaintiff with notice that, having discovered, as it claimed, that plaintiff had violated his covenant not to assign, defendant elected to declare the lease void

and to repossess itself of the premises, and thereupon it proceeded to cut off the supply of water, steam, and electricity, with which under an agreement collateral to the lease defendant had supplied the premises, thus compelling the closing of the restaurant which was then in full operation, whereupon this action was begun to restrain defendant from canceling the lease and for other relief.

There is no finding and no evidence to justify a finding that the transaction evidenced by the instruments of August 28, 1912, involved any loan of money by O'Brien to plaintiff, or that such instruments were intended as a mortgage. There is nothing from which it could be inferred that any moneys, except a percentage of the proceeds of the lease if the same should be sold, the business, or possession of the premises were ever to come back to plaintiff. It does appear that defendant on several prior occasions was asked to consent to an assignment of the lease to O'Brien, which it refused to do. No fact is found to negative the fair import of the transaction, which is that plaintiff sold his half interest in the business and all of his interest in the lease to O'Brien, and that he executed the several instruments for the purpose of transferring to and investing O'Brien with the ownership of both.

The recording of the power of attorney was of no practical value unless they, or that one particularly affecting the lease, was to be read as an assignment. The care taken to recite in the agreement by virtue of which the powers were executed that the lease was not assignable is not, under the circumstances, to be accepted as evidence of any actual intent or purpose not so to assign, because a failure so to assign is inconsistent with what was the evident purpose of the parties. To my mind, this recital is greater evidence of a cunning attempt on the part of the draftsman to conceal his real object than of an honest purpose to protect a bona fide interest against what might otherwise be urged for its defeat. But, by the instruments passing between them, did the parties actually succeed in assigning the lease? By the first power of attorney, O'Brien is irrevocably empowered to carry on the business, and, by the second, he is appointed plaintiff's attorney irrevocable "to hold, sell or assign" plaintiff's interest in the lease. An assignment of lease need not be in any particular form. It is sufficient if by it the entire interest of the lessee in the term passes, without reversion. Herzig v. Blumenkrohn, 122 App. Div. 756, 107 N. Y. Supp. 570. Under the power O'Brien was not only authorized to sell and assign the lease, but "to hold" plaintiff's interest therein, and this irrevocably, and possession was surrendered to him. I cannot see that this left any reversion in plaintiff. It is urged that the power was not one coupled with an interest and would have been revoked by plaintiff's death. The power was executed in pursuance of the previous agreement and for the consideration therein expressed. It was therefore not only irrevocable, but inasmuch as it included a power "to hold," and possession was taken thereunder, it was a power coupled with an interest and would have survived plaintiff's death. Terwilliger v. Ontario, C. & S. R. R. Co., 149 N. Y. 86, 43 N. E. 432; Hutchins v. Hebbard, 34 N. Y. 24; Hunt v. Rousmanier, 8 Wheat. 174, 5 L. Ed.

589. Under these circumstances, O'Brien in plaintiff's lifetime or thereafter could have made conveyance of the lease in his own name. Hunt v. Rousmanier, supra, 8 Wheat. pages 204, 205, 5 L. Ed. 589. The record justifies our finding that this power was intended to be, as it was in law, an assignment.

The thirty-sixth and thirty-eighth findings of fact of the trial court should be reversed, and a finding made that the possession of the premises by O'Brien after August 28, 1912, was exclusive and in his own right as assignee of the whole remaining term of the lease, by virtue of an assignment thereof from the plaintiff evidenced by the paper hereinbefore referred to.

The judgment should be reversed, with costs and disbursements to appellant, and the complaint dismissed, with costs. Settle order on notice.

INGRAHAM, P. J., and McLAUGHLIN and SCOTT, JJ., concur. DOWLING, J., dissents.