[Civ. No. 5294.   Second Appellate District, Division Two.—May 8, 1929.]

S. L. WEINTRAUB, Respondent, v. BEN WEINGART et al., Appellants.

Ingall W. Bull and Harold Larson for Appellants.

Willebrandt & Horowitz, Frank P. Doherty and Girard F. Baker for Respondent.

BURNELL, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff in an action in unlawful detainer. The cause of action set up in the complaint was grounded upon the alleged assignment by the defendant and appellant Weingart of a lease containing a covenant against assignment. The answer denied that there had been any assignment and by way of a second defense plead estoppel.

The grounds urged by appellants in seeking a reversal of the judgment are, first, that the evidence is insufficient to support the finding that the lease had been assigned; second, that it is insufficient to support the finding that respondent was not estopped to question or complain of

the assignment if in fact there was an assignment. The facts, in so far as they are necessary to be summarized for an understanding of the situation of the parties and their actions with respect to the lease in question, are as follows: January 20, 1922, respondent, by written lease, leased the Ponet Hotel, Los Angeles, to appellant Weingart for a term of ten years commencing April 1, 1922, and ending March 30, 1932. Among other things this lease provided that: "said leased premises are to be conducted and operated by said lessee as a hotel and office rooms, and as his compensation for so managing and operating said leased premises as such hotel, said lessee is to receive and be paid one-third of the net profits derived therefrom. . . . " The other two-thirds were to be "retained" by the lessor as rental. On or before the tenth of each month an accounting was to be had. The operating expenses were not to include "any salary or allowance to the lessee for his services in operating said hotel." The lessee covenanted "to keep said premises and all appurtenances thereto in a clean and wholesome condition and to comply faithfully" with all city and state laws during said term. The clause relating to assignment was as follows:

"The said lessee hereby covenants that he will not assign this lease, or any part thereof, without the previous written consent of said lessor, his heirs, executors, administrators, or assigns; and that any assignment of said lease shall be voidable at the option of the lessor who may upon such breach, immediately reenter and take possession of said premises and the whole thereof without giving any notice."

Weingart went into possession and in April and May of 1922 respondent received checks representing his share of the net profits, signed by Lincoln Investment Company. Early in June respondent left for Europe. During the early part of 1922 appellant Weingart, who was then operating a large number of hotels in Los Angeles, organized the Lincoln Investment Company for the purpose of carrying on his business affairs through that corporation, and in June, 1922, applied to the corporation commissioner for a certificate authorizing it to sell its securities. This application recited that the corporation "proposes to purchase and acquire from Ben Weingart property and assets of the value of $590,761.72" subject to certain liabilities

"as per statement submitted herewith, for 5500 shares of the capital stock of this corporation." Listed among the assets to be so acquired is the lease of the Ponet Hotel, valued at $15,000. Appended to the application as an exhibit appeared a copy of an agreement executed .by the corporation and Weingart which contained this language:

"Whereas, the party of the second part is the lessee of the following described premises under and pursuant to leases on the premises now owned and held by the party of the second part (listing a great many, including the Ponet Hotel).

"And, whereas, said leases are not transferable without the written consent of the lessor named in said lease; and

"Whereas, in some instances it will be impossible to get the consent of said lessor to the transfer and assignment of some of said leases (it was therefore agreed) that the party of the second part (defendant Weingart) will hold each and all of said leases in trust for the use and benefit of the party of the first part (Lincoln Investment Company) until the expiration of the term specified in each lease." Also: "that the party of the first part will pay all rentals and obligations assumed by the party of the second part, in, by or through said leases, and each of them."

On June 7, 1922, the corporation commissioner issued a permit to the corporation, authorizing the sale of its securities and "to issue to Ben Weingart 5500 shares of its capital stock in consideration of the transfer and assignment by him to applicant, first to be made, of all the property and assets set forth and described in its application, subject to liabilities of $1,930."

Up to this time the corporation, as conceded by both parties, had no interest whatsoever in the lease in question.

Thereafter a statement was sent to respondent each month, accompanied by the check of the corporation for the amount thereby shown to be due him as his two-thirds of the preceding month's profits. During respondent's absence abroad these checks were indorsed by his son and cashed.

In October, 1922, respondent returned to Los Angeles. Thereafter and until May, 1925, respondent each month received the monthly statements and check of the corporation and indorsed and cashed the latter. Each of these

statements showed a distribution of profits, two-thirds to respondent and one-third to the Lincoln Investment Company.

On December 15, 1922, respondent wrote a letter to appellant Weingart which contained the following:

"I notice also that your letter is signed 'Lincoln Investment Company, by L. H. Hall, Secretary,' and I would like to be informed as to whether you are doing business under the name of Lincoln Investment Company, or whether you have turned over this lease to a company known as Lincoln Investment Company."

No reply to this inquiry seems to have been made, and on January 22, 1923, respondent signed and had served upon Weingart and the corporation a "notice of termination of tenancy," reciting the lease clause forbidding assignment without respondent's written consent and alleging a violation thereof "by the assignment of said lease by the original lessee, Ben Weingart, to Lincoln Investment Company." On January 25, 1923, Weingart wrote to respondent, acknowledging receipt of this notice and saying: "You are in error when you claim that I have assigned the lease of the Ponet Hotel, referred to in your notice. The same has not been assigned."

In reply to that letter respondent's attorneys wrote to Weingart on January 27, 1923, as follows:

"Your letter dated January 25th, addressed to Mr. S. L. Weintraub was handed to me for attention.

"I note that you state he is in error with respect to the assignment of the lease of the Ponet Hotel.

"Mr. Weintraub does not desire to terminate your lease, if it is not true that you have assigned the same. However, his information is that you have executed an instrument whereby you agreed to hold this lease in trust for the use and benefit of the Lincoln Investment Company, and according to the information given us we have construed this to be an assignment. However, if you will send us an exact copy of the agreement, I will reexamine it for the purpose of determining whether or not there is really any controversy between us."

The reply to this letter was brief and pithy. It was as follows:

"Gentlemen: Replying to your letter of the 27th inst. I beg to state that the Lincoln Investment Company has no interest whatsoever in or to the Ponet Hotel, or anything therein contained."

Upon receipt of this missive, plaintiff, believing it spoke the truth, dropped the matter. As a matter of fact, during all this time the income from the Ponet Hotel was received by the corporation and accounted for by it on its income tax return. This was stipulated at the trial. Furthermore, all bills for the hotel were paid by the corporation.

Respondent testified that he believed the statements in Weingart's letter of January 25th, and those in the reply to the letter written by his attorneys on January 27th, and also a statement made to him verbally by Weingart in the early part of January, 1923, to the effect that sending out checks signed by the Lincoln Investment Company "was just his way of doing business, so that he could adjust his taxes or pay his taxes to the federal government" and that this belief was his only reason for not going ahead with proceedings in unlawful detainer following the service of the notice above referred to.

The first definite information received by respondent which caused this belief to be shaken was, according to his testimony, when he had an auditor examine the books of the hotel in May, 1925. Thereafter he refused to accept the checks representing his share of the net profits and on May 27th caused another notice of termination to be served. On June 1, 1925, respondent's attorney wrote to Weingart's attorney as follows:

"I will state that our information now is that Mr. Weingart has actually made an assignment of the lease to the Lincoln Investment Company. I would be willing, however, to hold up the filing of the complaint if permission were given me to freely examine the books and records of the Lincoln Investment Company. If such an examination would disclose the fact that the lease was not assigned to the Lincoln Investment Company, of course I would not proceed further with the suit."

On June 2, 1925, this action was commenced.

■ We agree with the court below in its conclusion that there was an assignment of the lease by Weingart to the Lincoln Investment Company.

In the first place, the language above quoted from the agreement between Weingart and the corporation indicates that it was intended to take the place of an assignment in the usual form, because of the difficulty or impossibility of securing the consent of the lessor to such an assignment. In the second place, it constitutes Weingart a mere naked trustee to hold the lease in trust for the corporation, and for the latter's *use and benefit*, the corporation to "pay all rentals and obligations" assigned by Weingart in the lease.

After the execution of the trust agreement Weingart parted with all rights of dominion over the lease and the premises thereby demised. His position as trustee was akin to that of a mere agent or employee of the Lincoln Investment Company, the beneficiary under the trust (secs. 2258, 2267, Civ. Code). The corporation took the lessee's share of profits from the operation of the hotel and accounted therefor in its income tax return. It paid all expenses.

As such trustee Weingart might have been removed and the trust terminated at any time by the sole beneficiary, Lincoln Investment Company.

In the case of *Eakle* v. *Ingram*, 142 Cal. 15 [100 Am. St. Rep. 99, 75 Pac. 566], the plaintiff brought suit to dissolve the trust and discharge the trustee. Judgment went for the plaintiff, the court stating:

"The judgment, we think, is right. The plaintiffs are the only persons beneficially interested in the property (Civ. Code, sec. 866; *Morffew* v. *San Francisco etc. R. R. Co.*, 107 Cal. 595 [40 Pac. 810]; 1 Perry on Trusts, sec. 320; *Young* v. *Bradley*, 101 U. S. 787 [22 L. Ed. 1044, see, also, Rose's U. S. Notes]), and in such cases the rule is as stated by Mr. Underhill: 'If there is only one beneficiary or if there are several and they are all of one mind, and he or they are not under any disability, the specific performance of the trust may be arrested, and the trust modified or extinguished.' (Underhill on Trusts and Trustees, pp. 13, 370–375, and cases cited. See, also, 2 Perry on Trusts, sec. 920; 1 Perry on Trusts, sec. 104; Civ. Code, secs. 2252, 2258; Lewin on Trusts, 684, 685; Hill on Trustees, 278; Tiffany & Bullard on Law of Trusts and Trustees, 815, 816.) The court below was therefore empowered to decree a dissolution of the trust, and a release of the trust

property by the trustees; which is the effect of the judgment. He (trustee) was a mere bare trustee, without interest, except that he might but for the decree have become entitled to compensation for services as trustee; but this furnished no reason for the continuance of the trust."

True, Weingart held a majority of the stock of the corporation and while he so held it the corporation would not have been likely to have taken action to terminate the naked trust, but there was nothing to prevent Weingart from disposing of his stock to an outsider and nothing in law to at any time prevent the corporation—the separate legal entity known as Lincoln Investment Company—from seeking a termination of the trust and a merger of all rights in the lease in itself.

Appellants take the position that Weingart and the corporation were to all intents and purposes one and the same, hence that a transfer to the corporation was in effect as though Weingart had merely taken the lease from one pocket and placed it in another. They argue that "for all practical purposes the corporation and Weingart personally are one" and that respondent "is exactly in the same position as if defendant Weingart had never formed any corporation or transacted any business through the corporation and had never entered into the trust agreement." It is true that Weingart testified that he owned all of the corporation stock and that the certificates standing in the name of his wife, his foster-mother and others had been indorsed by them and were in his possession and that he considered himself the Lincoln Investment Company. On the other hand, there is the second application to the corporation commissioner signed by Weingart and verified, which states "that the following persons own all of the stock" (naming them). The corporation's statement of assets shows a value of $100 per share, and the stock standing in the names of others than Weingart had a value of approximately $232,666.

If we are to adopt the view of counsel for appellants, as above set forth and as again stated in their closing brief, "that this was simply a one-man corporation with Weingart president, treasurer, general manager and in fact the whole corporation, and for all intents and purposes everything was

as though Weingart personally owned all of the property of the corporation instead of the corporation owning it," we are faced with the fact that this "one-man corporation," in other words Weingart himself, according to his own theory as above stated, applied to the corporation commissioner for a permit to issue to Weingart 5,500 shares of stock "*in consideration of the sale and transfer* to the corporation of the good will and assets of Ben Weingart *as per statement attached*," which statement listed the Ponet Hotel lease among the other assets, and pursuant to that application the corporation commissioner issued his permit "To issue to Ben Weingart 5500 shares of its capital stock in consideration of the transfer and assignment by him to applicant first to be made of all the property and assets set forth and described in its application, subject to liabilities of $1,930." (Italics ours.) A subsequent application to the commissioner recited the issuance of this stock "in conformity with" the terms of the first permit. Was not this a recognition by Weingart of the fact that the transaction amounted to an assignment? We think it was.

█ Whether or not an instrument is to be deemed an assignment of a lease is to be determined by the legal effect and not the form of the instrument. The law always respects form less than substance. (Civ. Code, sec. 3528.)

█ If its legal effect is to substitute a third party for the lessee, conferring upon him the right to the benefits and subjecting him to the burden of the lease for the balance of the term thereof, without providing for any reversionary interest in the original lessee, it will be held to amount to an assignment.

Mr. Wood in his work on Landlord and Tenant, section 258, thus states the rule:

"An assignment, as contradistinguished from a sublease, signifies a parting with the whole term; and whenever the whole term is made over by the lessee, although in the deed by which that is done the rent and a power of re-entry for non-payment are reserved to himself, yet the instrument amounts to an assignment, and not a sublease."

"It is essential to a lease that some reversionary interest be left in the lessor, for if by an instrument purporting to be a demise he parts with his whole term, it will amount to

an assignment of the term." (Taylor, Landlord and Tenant, sec. 16.)

In *Craig* v. *Summers,* 47 Minn. 189 [15 L. R. A. 236, 49 N. W. 742], it was held that whether or not an assignment of a lease had been made is a question of the legal effect and not of the form of the instrument. In that case the lessee had signed an instrument in the form of a sublease to a third party covering the whole of the premises demised under the original lease, and for the entire remainder of the term thereof. This was held to constitute an assignment.

In *Walsh* v. *Martin,* 69 Mich. 29 [37 N. W. 40], it was held that where the lessee turned over the lease and the premises to a third party, who thereupon went into possession and paid the rent to the lessor, "this constituted in law an assignment" although no instrument in form an assignment had been executed.

In the case of *American Savings Bank* v. *Mafridge,* 60 Wash. 180 [110 Pac. 1015], the court says: "An assignment of a term for years occurs when the lessee transfers his entire interest therein without retaining any reversionary interest. If an instrument so transfers the lessee's interest, it constitutes an assignment regardless of its character and form (22 Cyc. 972). No particular form of assignment is necessary. Thus, as heretofore stated, a general lease, quitclaim, or other conveyance of the lease-hold premises may render the grantee an assignee."

Likewise, in the case of *Taylor* v. *Marshall,* 255 Ill. 545, 547 [99 N. E. 638, 639], the court says: "Where all of the lessee's estate is transferred, the instrument will operate as an assignment, notwithstanding that words of demise, instead of assignment, are used, and notwithstanding the reservation of rent or right of re-entry on the non-payment of rent or the non-performance of the other covenants contained in it. (Wood on Landlord and Tenant, sec. 330.)"

In *Glendening* v. *Western Union Tel. Co.,* 163 App. Div. 489 [148 N. Y. Supp. 552], the lessee had sold a half interest in the business he had been conducting on the leased premises and subsequently executed powers of attorney to the purchaser to carry on the whole business and to hold, sell, assign or surrender any interest that he, the original lessee, might have in the lease. It was held that such an

agreement amounted to an assignment of the lease. In that case great care was taken in the agreement between the parties to state that it was not an assignment. The court states: "To my mind this recital is greater evidence of a cunning attempt on the part of the draftsman to conceal his real object than that of an honest purpose to protect a *bona fide* interest."

Again, there is a presumption of assignment which follows occupancy of the leased premises by another than the lessee, especially when the occupant pays the rent and cost of maintenance. (*Ecker* v. *Chicago etc. R. Co.*, 8 Mo. App. 223; *Williams* v. *Woodard*, 2 Wend. (N. Y.) 487; *Acker* v. *Witherell*, 4 Hill (N. Y.), 112.) Speaking of this presumption, Mr. Jones (Landlord and Tenant, sec. 442) says: "That an assignment of a lease causes a forfeiture does not prevent the usual inference arising from an occupation. There is no reason why a presumption of an assignment would not arise, even in a proceeding to enforce the forfeiture. The fact that an assignment will forfeit the lease is a strong motive for concealing the fact of assignment, and the character of the possession of the assignee. Thus the existence of such a condition of forfeiture in the lease is, if anything, an additional reason why a third person in possession should be presumed to be an assignee of the lease and compelled to explain the character of his possession."

To the same point is *Dickinson* v. *Fitterling*, 69 Minn. 162 [71 N. W. 1030].

For the reasons and on the authorities above set forth we are constrained to hold that the evidence supported the finding of the existence of an assignment.

■ Upon the question of estoppel little need be here added to the statement of the facts with which this opinion commenced. The evidence shows without conflict, it is true, that from the very first the checks for the lessor's two-thirds of the hotel profits, drawn by the Lincoln Investment Company, were received and cashed, but it is also uncontradicted that in April and May, 1922, the corporation had no interest whatsoever in the lease or premises. From early June to October of that year respondent was out of the state and when, upon his return, he noticed that the statements read "Lincoln Investment Company, one-third," he immediately inquired of Weingart as to the meaning of this and

was assured by the latter that there had been no assignment. Following this Weingart wrote the respondent's attorney, stating that the Lincoln Investment Company "has no interest in or to the Ponet Hotel or anything therein contained." As late as May 29, 1925, Weingart's attorney stated in a letter to respondent's attorney "that the Lincoln Investment Company has no interest of any kind or character in the Weintraub lease and the lease is still held by Mr. Weingart."

Appellants seem to have successfully lulled respondent's suspicions of the true state of affairs up to the time of commencing this action. This they did by making evasive and even false statements. They are in no position to urge an estoppel on respondent's part. An estoppel is based on a knowledge of the facts and acquiescence with the situation developed thereby on the part of the party against whom it is claimed. "There can be no estoppel when the facts are not known, as no one can be presumed to have waived that the existence of which he has not known." (*Wheaton* v. *North British etc. Ins. Co.*, 76 Cal. 429 [9 Am. St. Rep. 216, 18 Pac. 765]; *Puterbaugh* v. *Wadham*, 162 Cal. 618 [123 Pac. 804]; *Norton* v. *Overholtzer*, 63 Cal. App. 388 [218 Pac. 637].) "There can be no estoppel *in pais* where the party against whom the attempt is made to invoke such estoppel does not know the full truth of the facts to which his conduct, declarations or representations constituting the basis of the alleged estoppel relate." (*Bisconer* v. *Billing*, 71 Cal. App. 779 [236 Pac. 329]; *Eaton* v. *Wilkins*, 163 Cal. 742 [127 Pac. 71]; *Bashore* v. *Parker*, 146 Cal. 525 [80 Pac. 707]; *Davis* v. *Winona Wagon Co.*, 120 Cal. 244 [52 Pac. 487]; *Murphy* v. *Clayton*, 113 Cal. 153 [45 Pac. 267]; *Ions* v. *Harbison*, 112 Cal. 260 [44 Pac. 572].) There is evidence going to show that respondent was never informed of the "trust agreement," or of the fact that the Ponet Hotel lease was listed among the assets which Weingart was to sell and transfer to the corporation, or that the corporation had been permitted to issue part of its stock to Weingart "in consideration of the *transfer and assignment*" (italics ours) to it by Weingart of the lease in question as one of his assets, or of the fact that the corporation included one-third of the receipts from the hotel in its income tax report. His request for a copy of whatever agreement existed between Weingart and the corporation was not complied with; in-

stead he received an unequivocal statement that the corporation had no interest whatever in the Ponet Hotel.

The trial court very properly found that no estoppel existed.

Judgment affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.