No. 15,150.

WILSON, INDIVIDUALLY AND DOING BUSINESS AS BANNER
MOTOR COMPANY *v.* MOSKO, INDIVIDUALLY AND DOING
BUSINESS AS DENVER MOTOR FINANCE COMPANY.
(130 P. [2d] 927)

Decided November 2, 1942.

Messrs. BLOUNT, JANUARY & YEGGE, Mr. GRANT E. MC-GEE, for plaintiff in error.

Mr. DAVID H. MORRIS, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

PLAINTIFF in error, as plaintiff, instituted an action in replevin in the district court of the City and County of Denver against defendant in error, as defendant, to recover the possession of a certain Chevrolet automobile of which he claimed to be the owner and entitled to immediate possession. Judgment was for defendant and plaintiff brings the cause here to reverse that judgment. For convenience, the parties will be designated as in the district court.

Plaintiff and defendant were engaged in business in the city of Denver. Plaintiff worked as a mechanic at the Logan garage, and as a side line purchased and sold secondhand cars. Defendant, doing business as the Denver Motor Finance Company, was also engaged in the secondhand automobile business.

One Frank Kelly, a duly licensed dealer in secondhand cars, doing business as Kelly Auto Company, was engaged in the business of selling secondhand cars on commission in the city of Englewood, Colorado, where he maintained a used-car lot. On or about the sixth day

of September, plaintiff permitted Kelly to take the Chevrolet car involved in this suit to demonstrate it to one Kennedy, a prospective purchaser. Kennedy took the car into his possession for several days, but being unable to finance the purchase of it, turned it back to Kelly. Kelly retained the car in his possession for approximately a week, during which time he drove it to defendant's place of business and attempted to sell it to him for $350. Defendant refused to purchase the car at this price, but offered $300. Kelly drove the car away and about three days later returned and advised defendant that he could sell the car to him at his price. Kelly did not have a certificate of ownership to the car, and did not deliver a certificate or assignment thereof as section 26, chapter 16, '35 C.S.A., provides shall be done in order to constitute a lawful sale. Kelly told defendant that the car belonged to the Securities Acceptance Corporation and that he had a small interest in it. Defendant said he knew that the car did not belong to Kelly; that he had never seen it on Kelly's lot, or on any occasion other than on the two mentioned when Kelly drove it to his place of business, and that he would not have relied upon Kelly's assertion had he stated that it was his car, because he knew that Kelly sold cars only on commission, but that he did rely upon Kelly's statement that it belonged to the Securities Acceptance Corporation; that Kelly represented that it was a foreign car and that a certificate of ownership would have to be procured; that he checked through the records of an organization maintained by automobile dealers to see if there were any mortgages on the car; that he made no other investigation whatsoever to determine in whose name the certificate of ownership thereto had been issued, and relied solely on Kelly's statement that it belonged to the Securities Acceptance Corporation; that he finally consummated the deal and made out the check to Kelly Auto Company, Inc., and Securities Acceptance Corporation, and that this was in accordance

with the practice and custom of secondhand car dealers in such cases. The check was given September 13, paid September 16, and although made payable to the Kelly Auto Company and the Securities Acceptance Corporation, was paid by the bank on the endorsement of "Kelly Auto Company, Frank Kelly." When the check was delivered, the car was left by Kelly at defendant's place of business where it remained for several days.

Defendant called Kelly and inquired about the certificate of ownership and Kelly came to defendant's lot and procured the car for the alleged purpose of securing such a certificate. Kelly then returned the car to plaintiff at the Logan garage where plaintiff stored his cars.

Early in October, Kelly absconded and went to California without having paid plaintiff for the car. Three weeks after the check had been given by defendant, he went to the Logan garage during plaintiff's absence from the city, and told Mr. Pierce who operated the garage, that he had looked at the Chevrolet car in question about a week before and wanted to take it and try it out. Pierce, thinking a man who accompanied defendant was a prospective purchaser of the car, and knowing nothing about the deal, told him the "brakes wasn't any good." Defendant said he just wanted to drive around the block. Defendant drove the car out and never returned. When the car was not returned, Pierce called defendant who then said he had purchased the car about three weeks before and refused to return it. Thereafter, the replevin suit was instituted.

The nine specifications of points upon which plaintiff in error relies for a reversal are comprehended generally within the first two, which are: "Specification No. 1. The evidence is insufficient to sustain the judgment of the Court. Specification No. 2. The judgment of the Court is contrary to the evidence."

■ The record is clear both from the direct testimony and reasonable inferences from the undisputed conduct of the plaintiff and Kelly, that the actual au-

thority conferred by plaintiff upon Kelly was not an agency to sell and transfer title to the car, but rather an agency to find a purchaser upon specified terms satisfactory to the plaintiff to whom plaintiff would then sell the car and transfer title thereto. An agent, to bind his principal, must act within the scope of his authority. We deem it unnecessary to cite authorities in support of this elementary proposition of the law of agency, for defendant in his brief concedes its correctness in these words: "We do not have any quarrel with counsel for the plaintiff with reference to the generally accepted principle of law on agency, viz.: that a principal is not bound by the actions of his agent, outside of the scope of the agent's authority."

Defendant says this case is taken out of the general rule by the acts and conduct of plaintiff and his agent, which he asserts were such as to make applicable the equally elementary rule: "That whenever one of two innocent parties must suffer by the act of a third, he who has enabled that third person to occasion the loss, must sustain it himself rather than the other innocent party."

Defendant's analysis of the testimony in effect is, that even though, as to the authority conferred by plaintiff, Kelly was only an actual agent to find a purchaser to whom plaintiff would sell, that as to defendant, plaintiff's conduct was such as to make Kelly an ostensible agent to sell the car and transfer the title. The distinction between actual and ostensible agency is as follows: "Agents are actual agents if expressly or by necessary implication in fact authorized to act for the principal on his behalf; they are ostensible agents if the principal, intentionally or through want of ordinary care, induces others to believe they are his agents, although they have been given no authority." 2 C.J.S., p. 1035, §3. b.

In support of his contention, defendant relies strongly on two cases: *Zuckerman v. Guthner*, 105 Colo. 176, 96 P. (2d) 4, and *Carter v. Rowley* (cited and quoted in

part with approval in the Zuckerman case), 59 Cal. App. 486, 211 Pac. 267. Zuckerman v. Guthner is distinguishable on the facts from the instant case, and while the facts in Carter v. Rowley may be sufficiently similar to those of the instant case as to make the cases undistinguishable, there is a provision in our law that does not permit the drawing of the same conclusions from the facts as were drawn by the California court. If California has a similar provision in her law, it was not considered by the court in its opinion.

Section 26, chapter 16, '35 C.S.A., is as follows: "(a) It shall be unlawful for any person, firm or corporation to offer for sale, attempt to sell or to sell any secondhand or used automobile unless the original bill of sale thereof, or certificate of ownership, as provided for in this subdivision, and all assignments thereof, if any, shall have been recorded in the office of the county clerk and recorder of the county where such secondhand or used automobile is offered for sale, and it shall be unlawful for any person, firm or corporation to purchase a secondhand or used automobile unless the original bill of sale or certificate of ownership, as provided for in this subdivision, or a duly certified copy thereof, together with all previous assignments, as above provided for, have been duly recorded in the county where such transaction takes place, and the said bill of sale or certificate of ownership, as provided for in this subdivision, and assignments or duly certified copies thereof are delivered with the said secondhand or used automobile. Any person convicted of violation of the provisions of this section shall be deemed guilty of a misdemeanor and shall be punished by a fine of not more than five hundred dollars ($500.)."

It will be observed in the Zuckerman case that the arrangement between Zuckerman, as principal, and Gerick as his agent, provided expressly for a transfer of the certificate of ownership to the two cars to Gerick and for a sale of the cars and an assignment of the cer-

tificate from Gerick, the alleged agent, to the purchaser. Zuckerman was doing this, so he testified, because he had no license himself to operate as a dealer ·in second-hand automobiles. If he arranged to transfer the cars and to assign the certificate of ownership to Gerick, and was to receive an agreed payment when Gerick at some time in the future found a purchaser for them and sold the same to him and received payment therefor, this either constituted a sale to Gerick, or an express authorization to Gerick to sell and transfer the cars without an assignment and delivery of the certificate of ownership.

We held in *Littell v. Brayton Motor & Accessory Co.,* 70 Colo. 286, 201 Pac. 34, *Williams v. Stringfield,* 76 Colo. 343, 231 Pac. 658, and in *Forney v. Jones,* 76 Colo. 319, 231 Pac. 158, that a violation of the statute (section 26, supra) does not prevent the passing of title. In the latter opinion we said, "The provision for a penalty, with none for avoidance, is usually held to be an indication the latter is not intended." Under this state of the law as construed by our former decisions, it was entirely consistent to hold Zuckerman to the result of what he had expressly agreed with Gerick, his agent, to do, namely, to transfer the title and deliver the cars to him, payment for such transfer of title and delivery to be made by him (Gerick) when he had sold the cars. Here was no case of a holding out by intentional or negligent conduct, that Gerick was an agent to sell; in other words, there was no ostensible agency, but an actual expressly conferred authority in Gerick to sell Zuckerman's cars to purchasers to be found by him, and to transfer the titles thereto to such purchasers. To make it possible for Gerick to do as authorized, Zuckerman transferred and delivered the cars to him and agreed to assign the certificates of ownership *to him, after* he had made the sale of the cars as his own, for Zuckerman could not .sell them because he was not a licensed dealer.

In the instant case there is no showing of an actual

authority in Kelly to sell and transfer title to the car involved in this suit. The extent of the actual authority was to find a purchaser.

This brings us to the real question in the case. Do the facts in this case constitute Kelly the ostensible agent of the plaintiff so that a sale and delivery of the car to defendant without an assignment of the certificate of ownership passes title and binds plaintiff? We are of the opinion that they do not. If one owning a car sells and delivers it to another without assigning and delivering the certificate of ownership and the purchaser receives it under those conditions, the sale is unlawful, though, as we have held, not void; and both the seller and the buyer are guilty of a criminal act, a misdemeanor under the statute. Section 26, supra. The purchaser, dealing directly with the owner, may rely upon the owner's act, even though it involves his commission of a misdemeanor. The owner, he may assume, intends the consequence of his act—a sale and the commission of a misdemeanor in effecting it. Similarly, if an owner *expressly* conferred authority on his agent to sell and pass title without an assignment and delivery of the certificate of ownership, as in the Zuckerman case, the owner would be guilty of a misdemeanor, for his express authorization to the agent to do the unlawful act, makes the act his own. But the presumption is that men intend to obey rather than to violate the law. A man charged with a violation of law is presumed innocent until proven guilty. In the instant case there were no facts shown to have been known to defendant save that Kelly had possession of the car, that he was a licensed dealer, and that defendant once previously had bought a car, an Oldsmobile, from plaintiff, Kelly acting as agent and producing him as a purchaser, and that he had made the check in payment therefor to, and received the assigned certificate of ownership from, plaintiff. Assuming, but not holding (for it is not necessary so to hold), that these facts were sufficient to constitute

an ostensible agency in Kelly, with no unlawful act involved—as for instance if the sale had been of a chattel not subject to the provisions of section 26, supra—it does not follow that an inference may be drawn from them that plaintiff had intended to authorize his agent to do that which would make him, the plaintiff, guilty of a misdemeanor. A man willing to buy in violation of the law, even if such be the custom of the trade, should not be permitted to force upon an owner an unlawful selling, in the absence of proof that the owner himself made the unlawful sale or expressly authorized his agent to make it. So to hold either would make the law a nullity or the owner guilty of a misdemeanor by implying an intention to do an act which he did not in fact intend to perform.

Judgment reversed.