**Kalman Lester APPLE, an infant, by and through his Guardian ad Litem, William J. Scammon, Plaintiff,**

v.

**STANDARD OIL, DIVISION OF AMERICAN OIL COMPANY, a Maryland corporation, et al., Defendants.**

**Civ. No. 46886.**

United States District Court
N. D. California.

Nov. 14, 1969.

William J. Scammon, San Mateo, Cal., for plaintiff.

Bronson, Bronson & McKinnon and Paul J. Sanner, San Francisco, Cal., for defendants.

## ORDER AND OPINION

JAMESON, District Judge.

This is an action for personal injuries sustained by the plaintiff, Kalman Lester Apple, on August 28, 1966, at a gasoline filling station at Steamboat Springs, Colorado, when he was bitten by a dog. The station was operated by Robert V. Selbe [1] under the name of "Selbe's Standard Service" under lease from The American Oil Company, a Maryland Corporation, designated in this action as Standard Oil Division American Oil Company, a Maryland Corporation.

Plaintiff, who was six years of age, was a passenger in his father's automobile. The father stopped at the filling station to purchase a fan belt. He told his son to get out of the car and go to a rest room. In going to the rest room,

---

1. Selbe was initially named as a party defendant. An order was entered August 7, 1967, quashing the return of service on the ground that the court had no jurisdiction over the person of this defendant.

plaintiff noticed a dog that was chained to the side of the building. Plaintiff went up to the dog and touched it on the nose and was attacked and bitten by the dog. The dog was owned by Selbe.

Plaintiff's father, Seymour Apple, had a credit card issued by Standard Oil Company of California. The front of the credit card, received in evidence as plaintiff's exhibit No. 1 reads as follows:

[A576]

The reverse side reads:

[A577]

The word "Standard" appears on the building at the Steamboat Springs station, and at various points on the station premises are signs with a "Standard" emblem, as shown by a picture, received in evidence, as plaintiff's exhibit No. 2:

[A578]

It will be noted that the reverse side of the credit card indicates that the card shall be honored "at the following signs", as shown by the numbers opposite each state. For Colorado signs of numbers 1 (Chevron) and 8 (Standard) are designated. The "Chevron" sign is distinct from the "Standard" sign used by defendant.

Apple testified that he had not heard of The American Oil Company prior to the accident; he thought all of the Standard Stations were the same; and the fact that the sign said "Standard" was "the only reason" he stopped there, because he had a Standard Oil credit card.

The American Oil Company was the owner of the station premises, together with the buildings, fixtures, equipment, machinery and appliances. Under the lease agreement Selbe, as lessee, agreed to pay a fixed monthly rental plus a sum equal to 1.5 cents per gallon on all gasoline delivered to the service station for resale.

The lease agreement contains the following provisions:

"3. Lessor, its agents and employees shall not be liable for any loss, damage, injuries, or other casualty of whatsoever kind or by whomsoever caused, to the person or property of anyone (including Lessee) on or off the premises, arising out of or resulting from Lessee's use, possession or operation thereof or from defects in the premises whether apparent or hidden, or from the installation, existence, use, maintenance, condition, repair, alteration, removal or replacement of any equipment thereon, whether due in whole or in part to negligent acts or omissions of Lessor, its agents or employees; * * *

"7. That none of the provisions of this lease shall be construed as reserving to Lessor any right to exercise any control over the business or operations of Lessee conducted upon the leased premises or to direct in any respect the manner in which any such business and operations shall be conducted, it being understood and agreed that so long as Lessee shall use said premises in a lawful manner as herein provided, the entire control and direction of such activities shall be and remain with Lessee."

L. J. Stolen, Claims Attorney for the American Oil Company in its Salt Lake City Regional Office, which handles service station leases in Colorado, testified that Selbe purchased his oil and gas from American and was expected to do so; that American expected any gas sold under its brand name to be its gasoline;

that it is illegal in Colorado to sell other gasoline under a brand name. He did not know whether Selbe purchased accessories, tires, etc., from American. The lease under which Selbe was operating did not require him to remain open any particular hours, but he was expected to keep open normal hours.

Stolen testified further that the lessor had a right to go on the leased premises to inspect them, even though this was not specified in the lease; that there was no particular time when sales representatives called on dealers; that the dealer was an independent businessman and the company exerted no pressure to buy its tires, batteries, and accessories; that pursuant to a credit card treaty entered into for the convenience of customers to permit national use, the companies selling the gasoline are reimbursed by the companies issuing the credit cards.

There was no evidence of any departure from the provisions of the written lease. It is conceded that no representative of defendant was present at the station during any of the time the Apples were there. Nor is there any evidence that the defendant knew of the presence of the dog.

Plaintiff does not contend that there was any actual agency, but seeks to recover on the ground that under both Colorado and California law, Selbe was an ostensible agent of the defendant and that defendant accordingly is liable for Selbe's negligence. There is no substantial dispute between the parties as to whether the law of Colorado or the law of California governs on this issue.[2] There is no showing that there is any conflict between the laws of the two states in the definition or application of the doctrine of ostensible agency.

California Civil Code § 2300 defines ostensible agency as follows:

"An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."

California Civil Code § 2317 provides: "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

In Wilson v. Mosko, 1942, 110 Colo. 127, 130 P.2d 927, 928, the Supreme Court of Colorado adopted the distinction between actual and ostensible agents as set forth in 2 C.J.S. Agency § 3.b., p. 1035:

"Agents are actual agents if expressly or by necessary implication in fact authorized to act for the principal on his behalf; they are ostensible agents if the principal, intentionally or through want of ordinary care, induces others to believe they are his agents, although they have been given no authority."

The rule relating to estoppel to deny agency as to third parties is stated in 2 C.J.S. Agency § 29.b.(2) (b), p. 1063:

"One who knows that another is acting as his agent or permitted another to appear as his agent, to the injury of third persons who have dealt with the apparent agent as such in good faith and in the exercise of reasonable prudence, is estopped to deny the agency."

While none of the California cases cited by counsel for either party is factually in point, language of the California courts in construing the California statutes and setting forth the requirements to prove an ostensible agency are pertinent. In Stanhope v. Los Angeles College of Chiropractic, 1942, 54 Cal.App.2d 141, 128 P.2d 705, a malpractice action against a chiropractic college, it was held that evidence that the plaintiff, after his injury, was carried to the chiropractic college and examined and then taken to an X-ray laboratory in the college building for X-ray examination and not placed on notice that the X-ray laboratory was

2. Plaintiff suggests that the "court should first look to the substantive law of Colorado, and if found wanting to the law of California; and that the California law should govern all procedural aspects".

not a part of the college, sustained an implied finding that the technician in charge of the X-ray laboratory was the "ostensible agent" of the college.

With reference to what constitutes an ostensible agency the court said:

"(After quoting § 2300 Civ.Code, supra). In this connection it is urged by appellant that 'before a recovery can be had against a principal for the alleged acts of an ostensible agent, three things must be proved, to-wit' (quoting from Hill v. Citizens Nat. Tr. & Sav. Bank, 9 Cal.2d 172, 176, 69 P.2d 853, 855): '[First] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person in relying on the agent's apparent authority must not be guilty of negligence. 1 Cal.Jur. 739; Weintraub v. Weingart, 98 Cal.App. 690, 277 P. 752.' "[3]

In holding that plaintiff had met the three requirements, the court continued:

"So far as the record reveals appellant did nothing to put respondent on notice that the X-ray laboratory was not an integral part of appellant institution, and it cannot seriously be contended that respondent, when he was being carried from room to room suffering excruciating pain, should have inquired whether the individual doctors who examined him were employees of the college or were independent contractors."

Duvall v. T. W. A., 1950, 98 Cal.App.2d 106, 219 P.2d 463, was an action for personal injuries sustained in a collision with a gasoline truck, owned by The Texas Company, but loaned to T.W.A. to be used in hauling products of The Texas Company. The driver was employed by T.W.A. Plaintiff sought to hold The Texas Company on the theory of ostensible agency by reason of the fact "that the truck was painted the typical bright red of The Texas Company truck, had its insignia on the door and also that the license plates had been applied for by The Texas Company", arguing that by allowing "Flaucher to drive the truck which so obviously belonged to The Texas Company it created in the minds of third persons the belief that Flaucher was its employee". In answering this contention the court said in part:

"There are of course instances in which an ostensible agency may be created by permitting a person to drive a truck under such conditions, but it cannot reasonably be contended that a motorist would be more likely to wish to collide with a truck bearing the insignia of The Texas Company than with one bearing any other insignia.

"The question of whether defendant Flaucher was an agent of defendant Texas Company was a matter for the trial court to determine upon the evidence in the case. We believe that the record not only amply supports the conclusion of the trial court that defendant Flaucher was not an agent of defendant Texas Company but it is difficult to understand how it could have arrived at any other conclusion." (219 P.2d at 470).

The parties agree that there is no California or Colorado decision factually in point. Cases from other jurisdictions appear to hold uniformly that an oil company under comparable facts is not liable for the negligence of the lessee-operator, unless the company exercises "control" over the lessee's operations, and support the conclusion that the facts upon which plaintiff relies in this case are insuffi-

---

3. The elements required to prove ostensible agency were stated in Reusche v. California Pacific Title Insurance Company, 1965, 231 Cal.App.2d 731, 42 Cal.Rptr. 262, 266, as follows: "Liability of the principal for the ostensible agent's acts rests on the doctrine of estoppel and its essential elements are representation by the principal, justifiable reliance thereon by the third party and change of position or injury resulting from such reliance." (Citing statute and cases.)

cient to establish an agency, either actual or ostensible.

A leading case, which has been followed in many subsequent decisions, is Coe v. Esau, Okl.1963, 377 P.2d 815. This was an action by a car owner against a filling station operator and Continental Oil Company, owner of the station premises, to recover for damages to his car resulting from the lack of adequate lubrication occasioned by the escape of oil through a faulty oil filter gasket installed by the station operator. In affirming a decision of the trial court sustaining a demurrer to the evidence as to the defendant Continental Oil Company, but reversing as to the defendant Esau, the court said in part:

"In support of his argument that Esau was an agent of Continental in the operation of the filling station where the faulty service work was performed upon plaintiff's automobile, plaintiff calls our attention to these facts: (a) Continental owned the premises upon which the filling station in question was situated; (b) Continental's name or trade mark was prominently displayed upon the station premises; (c) The name 'Conoco', Continental's trade mark for its gasoline and oil products, would appear on advertising matter and handbills distributed by Esau; (d) In the classified pages of the Tulsa telephone directory Esau's station was listed under the heading 'Conoco Service Stations' and Continental's triangular trade mark; (e) Esau extended the privilege of charging for gasoline, oil and service sold to all holders of Continental credit cards who were billed directly by Continental; (f) Esau received advice and suggestions from Continental concerning the standard of cleanliness at his station, although he did not have to 'abide' by them; (g) In consideration

for the use of the station premises and equipment Esau paid one and one-fourth cents on each gallon of gasoline sold; (h) Although Esau controlled his business hours, he was required to occupy the premises and operate the station 'or he would lose such right' ".[4] (377 P.2d at 817, 818).

It will be noted that the factual situation in Coe v. Esau and Continental Oil Company was even more favorable to the plaintiff than are the facts in this case, since the credit card had been issued by the owner-lessor. The court's opinion continued:

"It may be stated as a general rule that tenancy alone will not render the landlord liable for the torts of his tenant. Neither the mere fact of ownership of property nor that goods marketed under the trade mark or trade name of the landlord are advertised and sold upon the demised premises is deemed sufficient to raise an inference that the tenant-vendor is the agent or employee of the landlord. (Citing cases). It is indeed a matter of common knowledge and practice that distinctive colors and trade mark signs are displayed at gasoline stations by independent dealers of petroleum product suppliers. These signs and emblems represent no more than notice to the motorist that a given company's products are being marketed at the station. (Citing cases).

"Neither can we view the dealer's practice of honoring the producer's credit cards as indicative of a master and servant relationship. The use of such cards constitutes a distinct business advantage to the station operator who is accorded full credit for all purchases made by the card holders. (Citing cases).

" * * *

---

4. Plaintiff argues that the denial of liability in Coe v. Esau was not based on the lack of "ostensible agency". While the Oklahoma court may not have used the term "ostensible agency", it did hold that the very facts upon which plaintiff relies to establish an ostensible agency were insufficient as a matter of law "to show that the lessee-vendor is the agent or employee of the owner-lessor". (Syllabus by the Court, 377 P.2d at 817.)

"The facts and circumstances adduced by plaintiff's evidence are insufficient to raise the necessary inference that Continental either had the right to control or exercised the right to control the conduct of Esau in the operation of his station. Esau was free to, and did handle, tires and automotive accessories of other suppliers; he procured his own personnel, determined the daily business hours and the methods of doing business. The petroleum products supplied by Continental were sold to Esau on a cash basis. So far as the record discloses, Esau was not in any way restricted in adopting his own merchandising policies." [5]

In the recent case of Elkins v. Husky Oil Company, Mont.1969, 455 P.2d 329, the court affirmed a summary judgment in favor of the defendant. The decedent, his wife, and four children had stopped at Parker's Husky Station in Laurel, Montana. A station attendant had allowed a gasoline storage tank to overflow and the overflow spread into the service station and became ignited. An explosion and fire ensued at the time decedent's vehicle was parked at the station to purchase gasoline. Decedent suffered severe injuries from which he died the following day.

The decedent held a credit card issued by Richfield Oil Company, which bore an inscription on the back reading: "This card will also be honored at service stations of the following companies: United States: * * * Husky Oil Co. * * *." The Montana court first quoted extensively from Coe v. Esau, including those portions of that decision quoted supra, and then proceeded to plaintiff's "second contention, being that of an ap-

parent or ostensible agency". After quoting the Montana statute (sections 2–106 and 2–124 R.C.M.1947, which are identical with the California statutes quoted supra), the court referred to the signs advertising "Parker's Husky Station" and the credit card. The court then stated that "[i]n addition to what has been quoted * * * from the Esau case" there should be noted that in Searle v. Great Northern Railway Company, 189 F.Supp. 423, (1960) the United States District Court in Montana "held that, in order to rely upon a theory of ostensible authority, there must be some words or conduct of the principal, some 'holding out', upon which the plaintiff has relied". The opinion continued:

"This Court has previously expressed itself in Hartt v. Jahn, 59 Mont. 173, 196 P. 153, to the effect that to create liability on the theory of ostensible agency the party sought to be held as principal must by reason of some act on his part have led the other party to believe that an agency existed even though no agency actually existed.

"It is difficult to believe that the wording of the inscription on the back of the Richfield credit card which merely states that the credit card 'will also be honored' by service stations of Husky constitutes a 'holding out' by Richfield that Husky was their agent. We do not believe there was any issue requiring action by a jury."

In Reynolds v. Skelly Oil Company, 1939, 227 Iowa 163, 287 N.W. 823, the plaintiff was injured while his tire was being repaired by a filling station operator alleged to have been the agent of the defendant Skelly Oil Company, own-

5. Coe v. Esau, supra, was followed in Shaver v. Bell, 1964, 74 N.M. 700, 397 P.2d 723. Other cases denying recovery from oil companies in comparable situations include Foster v. Steed, 1967, 19 Utah 2d 435, 432 P.2d 60 (citing both Coe v. Esau and Shaver v. Bell); Crittendon v. State Oil Company, 1966, 78 Ill. App.2d 112, 222 N.E.2d 561; Drum v. Pure Oil Co., Fla.App., 1966, 184 So. 2d 196; Hoover v. Sun Oil Company, Del.1965, 212 A.2d 214; Sherman v. Texas Co., 1960, 340 Mass. 606, 165 N.E. 2d 916; Cawthon v. Phillips Petroleum Co., Fla.App.1960, 124 So.2d 517, 83 A.L.R.2d 1276, Anno. 1282; Brown v. Standard Oil Co., 1944, 309 Mich. 101, 14 N.W.2d 797; Cities Service Oil Co. v. Kindt, 1948, 200 Okl. 64, 190 P.2d 1007; Smith v. Cities Service Oil Company, 7 Cir. 1965, 346 F.2d 349.

er-lessor. In reversing a judgment in favor of plaintiff, the court said in part:

"The argument of appellee that the Skelly Oil Company was estopped because of the signs displayed and that, because of such signs, there was a presumption that the station was owned by the Skelly Oil Company has no support in reason or authority. As well argue that, because the word 'Chevrolet' or 'Buick' is displayed in front of a place of business, General Motors would be estopped to claim that it was not the owner of the business. It is a matter of common knowledge that these trademark signs are displayed throughout the country by independent dealers." [6] (287 N.W. at 827).

Restatement, Agency 2d states the general rules with reference to liability to third persons for torts within apparent authority as follows:

"§ 265. General Rule

"(1) A master or other principal is subject to liability for torts which result from reliance upon, or belief in, statements or other conduct within an agent's apparent authority.

"(2) Unless there has been reliance, the principal is not liable in tort for conduct of a servant or other agent merely because it is within his apparent authority or apparent scope of employment.

"a. Apparent authority exists only as to those to whom the principal has manifested that an agent is authorized * * *

"b. Unless one within apparent authority causes others to act, the existence of apparent authority does not cause a principal or master to be liable for trespass to the person or to land, nor, except as stated in Sections 266, 267, for negligently caused physical harm."

"§ 266. Physical Harm Caused by Reliance upon Representations

"A purported master or other principal is subject to liability for physical harm caused to others or to their belongings by their reasonable reliance upon the tortious representations of one acting within his apparent authority or apparent scope of employment."

"§ 267. Reliance upon Care or Skill of Apparent Servant or Other Agent

"One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

"a. The mere fact that acts are done by one whom the injured party believes to be the defendant's servant is not sufficient to cause the apparent master to be liable. There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct. * * * "

The Restatement has been cited in two cases involving actions against oil companies for negligent acts of lessee-operators. In Standard Oil Co. v. Gentry, 1941, 241 Ala. 62, 1 So.2d 29, 31, plaintiff sought damages for injuries sustained when he fell on a slippery floor at a filling station. The defendant oil company had itself operated the station until about three months before the accident and plaintiff had done business with the company at this station. He testified that his reason for transferring his business to that station was an unsatisfactory experience with an independent operator and a desire to do business with a

---

6. The requirements for ostensible agency set forth in the California cases, supra, are not essentially different from those considered in the cases denying recovery against oil companies where the facts were essentially the same as those upon which plaintiff relies in this case. I find nothing in any of the California or Colorado cases cited inconsistent with the conclusion that these facts are insufficient to establish an agency, either actual or ostensible.

more responsible party. "The sign exhibited to the public, the license exhibited in the office, both the telephone and city directory, and all other indications pointed to a continued operation of this station by the company". Under the circumstances the court held that it was for the jury to determine whether the company was estopped, "so far as plaintiff was concerned, from claiming it was not operating and maintaining this station when his injuries were sustained". The court recognized that "plaintiff must have relied upon such representations by the company", citing Restatement, §§ 265–267. Obviously this case is factually distinguishable.

In Miller v. Sinclair Refining Company, 5 Cir. 1959, 268 F.2d 114, 118, a filling station patron sought damages for injuries sustained on the station premises, claiming as one ground for recovery that the lessee was the oil company's agent because " 'lay patrons, like the plaintiff, Miller,' are 'misled' by Sinclair's signs and other advertising into believing that service stations bearing the Sinclair name are maintained by Sinclair. As for this theory of 'apparent agency,' it is sufficient for us to say that there is absolutely no evidence as to the reason why the appellant patronized this filling station." Sections 266 and 267 of the Restatement are cited in support of the court's conclusion. In the present case there was no reason for using the station aside from Apple's desire to use his credit card, issued by another company.

■ In determining whether the plaintiff has proved an "ostensible agency" within the rules set forth in the California statutes, the reported cases, and the Restatement, Agency 2d., we have this factual situation:

Apple had no contact with the defendant. He had a credit card of another company, first issued 14 years earlier. The card itself shows that the sign of the issuing company was distinct from that of the defendant. Apple stopped at the station to purchase a fan belt. The only reason he selected that particular station was because it would honor his credit card. He had never been there before. There is no evidence that defendant supplied Selbe with fan belts. There is evidence that Selbe was not required to purchase accessories from the defendant.

Defendant itself made no representations or statements to Apple. There is no suggestion that any knowledge on Apple's part of Selbe's authority or lack of authority would have affected his actions in any way. The plaintiff was bitten by a dog chained to a building. The dog was owned by the lessee-operator. There is no evidence that defendant even knew the dog was on the premises.

Under these circumstances the mere fact that the station sold defendant's gasoline and displayed defendant's signs would not constitute a "holding out" to Apple that the lessee-operator was defendant's agent or that Apple reasonably relied upon any representations of the defendant. Plaintiff has failed to establish an agency, either actual or ostensible.

In view of this conclusion, it is unnecessary to consider the other factual and legal issues. Service on Robert Selbe individually and d/b/a Selbe's Standard Service having been quashed, the question of Selbe's own negligence is not before the court. Certainly nothing stated herein should be construed as holding that plaintiff may not have a good cause of action against the lessee-operator of the station.

This opinion shall constitute the court's findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

It is ordered that judgment be entered for the defendant.