CHARLES MAYER, APPELLANT, V. FRANK P. DWIGGINS ET AL., APPELLEES.

FILED DECEMBER 30, 1925.  No. 23330.

1. Landlord and Tenant: ASSIGNMENT OF LEASE: EFFECT. A lessee, during his occupancy of the demised premises, holds both by privity of estate and of contract. Assignment of the lease by the lessee divests him of this privity of estate and transfers it to his assignee, who thereafter holds in privity of estate with the lessor.

2. ———: ———: ———. Privity of contract, however, is not transmitted to the purchaser of the leasehold by an assignment of the lease alone; for the express covenants of the lessee contained in the lease will remain, during the continuance of the term, obligatory upon the lessee. These obligations extend to breaches of covenant which have occurred after the assignment, and the lessee is not relieved therefrom by the mere acceptance of rent by the lessor from the person to whom such assignment has been made.

3. ———: ———: RIGHTS OF LESSOR. After an assignment of a lease, in absence of further contract, the lessor retains his right to enforce all the personal covenants of the lessee con-

Mayer v. Dwiggins.

tained in the lease against such lessee, wholly unmodified and unaffected by the fact that the assignment has been made, and his rights against such lessee under such covenants . would be wholly unaffected by the fact that the said assignee had deliberately incapacitated himself to perform his lawful obligations imposed by his privity of estate with reference to the term assigned to him.

4. ———: ———: RELEASE OF LESSEE. Where, by the express terms of the lease, it is provided that the lessees are empowered to make an assignment of said lease in a manner therein set forth, and which assignment, thus made, it is stipulated, should be effective to forever release and discharge such lessees from all obligations arising and accruing under the conditions of said lease subsequent to the date of such assignment, and where, pursuant thereto, an assignment in writing is made and duly recorded and possession taken thereunder by the assignee, and who for more than 17 months continues the payments of rents and the full performance of all the conditions and obligations imposed by the terms of the lease, which payments are received and which performances are accepted by the lessor with knowledge of the facts, and where thereafter the lessor actively engaged in assisting the said assignee in endeavoring to secure a purchaser of the term thus held by him pursuant to the aforesaid assignment, *held,* that thereby the lessor waives any rights which he might otherwise have exercised to object to the failure of the assignment to conform to the conditions provided therefor in said lease, and such assignment must be deemed valid and effective to forever release and discharge the lessee from any and all obligations imposed by the terms of the original lease.

5. ———: TERMINATION OF LEASE. In view of the conflicting claims of the parties to this action as to whether the demised premises have been surrendered or abandoned by the assignee of the lease, yet where the evidence discloses that the landlord (lessor) immediately after the abandonment or surrender of the premises by the assignee of the lease promptly took possession thereof and shortly thereafter commenced an action to quiet his title against the provisions of the lease, such proceedings are wholly inconsistent with the continuation of the tenancy and operate as an acquiescence in the abandonment or as an acceptance of the surrender, as the case may be. In either event the lease is wholly terminated, the covenants thereof are at an end, and will support an action only for liabilities that were fixed at the time of the termination of the lease, but will not sustain demands that might have thereafter accrued had the lease not been determined.

APPEAL from the district court for Lancaster county: ELLIOTT J. CLEMENTS, JUDGE. *Affirmed.*

*Field, Ricketts & Ricketts,* for appellant.

*F. M. Tyrrell, Peterson & Devoe, T. S. Allen, F. B. Sidles, C. S. Wilson* and *A. S. Johnston, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

On March 4, 1922, this action was commenced in the district court for Lancaster county, Nebraska, by Charles Mayer, plaintiff, against Frank P. Dwiggins and others, defendants. The amended petition upon which the case was tried sought (1) the annulment of a 99-year lease covering lots 14 and 15, in block 40, in the city of Lincoln, Nebraska; (2) prayed that the title to said lots be quieted; (3) and that a real estate mortgage executed by defendants Sandlovich and wife as surety for the lessees be foreclosed and the premises therein described sold, and out of the proceeds the plaintiff may be paid the sum of $20,000 with interest as liquidated damages occasioned by the failure of defendants to fulfil the terms of the aforesaid lease, and that plaintiff be given a personal judgment for that amount against Dwiggins and his codefendants. To this amended petition answers and cross-petitions were filed by the various defendants, to which pleadings the plaintiff replied. The district court adjudged the lease contract "annulled," and "held for naught," and that the title to said premises be quieted in plaintiff but determined that the pleadings and evidence in the case were insufficient to support a finding in favor of the plaintiff for either liquidated or actual damages and denied further relief. From the denial of the court of further relief, the plaintiff prosecutes an appeal to this court.

The facts out of which this litigation arose are as follows: On March 24, 1920, Charles Mayer leased to Frank

P. Dwiggins, and others, for the term of 99 years, lots 14 and 15, in block 40, in the original plat of the city of Lincoln, Nebraska. As evidencing the contract of the parties, in addition to the lease, a bond in the sum of $20,000 was signed by all of the defendants, and a mortgage was executed by Sandlovich and wife only "to take the place of a surety." The terms of the lease cover 18 typewritten pages, and, in addition to the required payment of rent, provided for the payment by the lessees of taxes, insurance, water rents, and repairs, and also contained the provision that on or before April 1, 1925, they (lessees) would commence to remove the building and other improvements now situated on the premises herein leased and replace the same at their own cost "with a modern fireproof building * * * which shall be completed not later than the first day of April, 1926, at a cost of not less than $75,000." Defendants entered into the property demised under the foregoing agreements evidenced by the three instruments in writing—the lease, bond, and mortgage. On June 14, 1920, the defendants assigned in writing all their rights in the property created by this lease to the American State Bank. This assignment recited that it was the purpose of the instrument "to divest the undersigned (lessees) of any interest or right or equity in the lease and to place and hold in the American State Bank all rights and privileges granted to the undersigned by the terms of said lease." It is to be remembered that the lease itself provided for the transfer of the rights of the lessees by assignment in writing and that the effect of such assignment would be to wholly divest the lessees of all liabilities created by the lease. However, the assignment executed by the lessees, above referred to, was not acknowledged or executed by the assignee. Neither did the assignee expressly accept the same nor assume the terms and conditions thereof in writing, as was required to be done by the terms of the lease. At or about the date of the assignment, the assignee, American State Bank, entered into possession of the property thereunder and thereafter promptly paid the rent and performed all the cove-

nants imposed upon the lessees by the terms of the lease until August 1, 1921. On July 16, 1921, the American State Bank was discovered to be insolvent. A receiver was thereupon appointed for the bank, who qualified as provided by law and who continued the full payment of the rents and the full performance of the terms of this lease until December 1, 1921. On December 3, 1921, demand was made in behalf of the plaintiff for all rents due and owing from all subtenants in possession of said premises and the same was delivered to him, and also that the rents and profits thereafter accruing be paid to him. In the month of December, 1921, pursuant to authorization of the court of competent jurisdiction, the bank receiver, Mr. Warner, in behalf of the insolvent bank, elected to repudiate and abandon the lease. In pursuance of such election he orally tendered the entire premises involved to the plaintiff. However, no assignment in writing or other instrument evidenced this fact. But plaintiff took full possession, and in August, 1922, leased the premises for a term of years as owner.

After reading the conflicting provisions to be found in the lease, the mortgage, and the bond, the writer of this opinion finds himself in full accord with the statement contained in plaintiff's brief to the effect that—"The language in which the three papers are written is uncertain, confused, and does not harmonize. It is difficult to determine with certainty whether the bond and mortgage were given to secure the performance of the covenants of the lease generally, or the covenant to erect and construct the new building alone, or the performance of all covenants up to and including that providing for the erection of the new building."

In view of these conflicting provisions contained in the three instruments now before us, it is thought that the question of construction presented necessitates the application of the following canons: (a) That, the evidence in the record indicating that the lease in question was prepared under the direction of the plaintiff, the maxim "that a

Mayer v. Dwiggins.

deed shall be taken most strongly against the grantor" is applicable; (b) that the special mention of one thing must be understood as excluding another; (c) that a surety is entitled to stand upon the strict terms of his contract and is bound only to these and in a manner pointed out in his obligation. True, even in the light of these rules, no decision which we might reach as to the conflicting clauses of these instruments before us is entirely satisfactory or entirely free from difficulty. But the more reasonable conclusion is that, properly construed, the bond and mortgage were given to secure the covenant to erect and construct the new building only.

In view of the conclusions arrived at on the subject of the real facts upon which this controversy is based, the following propositions of law become material: At common law a lessee, during his occupation, holds both by privity of estate and of contract. His privity of estate depends upon and is coexistent with the continuance of his term. By an assignment he divests himself of this privity of estate and transfers it to his assignee; it remains annexed to the estate, into whose possession soever the lands may pass, and the assignee holds in privity of estate with the original landlord. The privity of contract, however, is not transmitted to the purchaser by an assignment of the lease; for the express covenants of a lessee will, during the term, remain obligatory upon him and his personal representatives, even for breaches which have occurred after an assignment and acceptance of rent from the assignee by the lessor; so too a lessee, by assigning his rights and interests in the premises, does not thereby discharge himself of his express obligations. And it is also true that at common law a covenant for the payment of rent ran with the land, and that the assignee of the term is chargeable by reason of privity of estate with the payment of rent, but it is not his personal obligation, and at common law an assignee may always discharge himself from liability for subsequent breaches in respect to rent as well as to other covenants by assigning over, although it be done for the express pur-

pose of getting rid of his responsibility, and although the second assignee neither takes the property nor receives the lease, and this for the reason that such assignment destroys the privity of estate which is the only ground upon which the assignee was liable, and though the tenant's liability or his covenant to pay rent may subsist during the continuance of the lease, there is no personal confidence reposed in the assignee of the lessee. 2 Taylor, Landlord and Tenant (9th ed.) pp. 13-34; *Hogg v. Reynolds,* 61 Neb. 758.

Indeed, very respectable authorities sustain the proposition that after an assignment of a lease the lessor has two remedies, either of which may be prosecuted separately or both at the same time, one against the assignee during the time he is in possession of the demised premises under the assignment, for rent accruing during his possession, and the other against the lessees upon the personal covenants, from which, of course, the lessees by the mere assignment could not divest themselves. This statement would be subject to the qualification, however, that the lessor would be entitled to but one satisfaction. Therefore the right of action in favor of lessor and against lessees is wholly independent of the right of action in favor of the lessor against the assignee, and the prosecution of a cause of action against a lessee would be unaffected by the fact that the said lessee's assignee had deliberately incapacitated himself to perform his lawful obligation.

In the order of time, the first question arising in this transaction is the effect of the assignment to the American State Bank by the defendants Frank P. Dwiggins et al., on June 14, 1920, and which was duly recorded on June 17, 1920, in the office of the register of deeds in Lancaster county, Nebraska. By the terms of section 33 of the lease it was provided and the lessees were empowered to make an assignment of the lease in question which should be effective to forever release and discharge such lessees from any obligations arising and accruing under the conditions of said lease subsequent to the date of the assignment. This

Mayer v. Dwiggins.

the lessees evidently attempted to do. The assignment they executed for this purpose, however, was defective in that the assignee failed to join in the execution of such assignment, and the assignment did not in explicit words bind the assignee personally to the performance of the covenants of the lease. It may be conceded that this was a failure to fully comply with said section 33 of the lease. The bank, however, entered into unmolested possession of the premises pursuant to the lease thus assigned and so long as it was solvent continued to pay rent and complied with the covenants thereof. So did its receiver up to December, 1921. It may be conceded that the rule in this state is:

"Where a lease stipulates that the lessee shall pay the rent for a definite period upon the demised premises, the mere acceptance of the rent by the lessor from the assignee of the lease will not discharge the lessee, even though the lessor had knowledge of the assignment, and that the assignee had gone into possession." *Bouscaren v. Brown,* 40 Neb. 722.

But here we have some additional facts which certainly should be considered with all the other facts pertaining to this assignment; one fact being that the lessor made no objection to the assignment of the lease which might have been deemed void, but that he accorded full recognition to the assignment as valid. The evidence is uncontradicted that about December 1, 1921, the lessor by his agent went to Warner, the receiver, anxious to have Warner continue to hold possession of the leasehold under his assignment and carry out the provisions thereof. When this was found to be impossible, at the cost of the lessor the lessor's agent went to Omaha to assist in disposing of the rights thus held by Warner under and pursuant to the terms of the assignment. Conceding that the assignment was subject to attack if a seasonable attack had been made, the fact remains that no attack was made. It plainly appears that the lessor and his agents, with full knowledge of the facts, waived any defects in the assignment, and by the force and effect of lessor's acts the same was approved, and he should

not now be permitted to take a stand inconsistent with the attitude he took when he sought to secure the benefits which would have accrued to him by the full enforcement or recognition of the assignment of said lease as a valid subsisting instrument. It would follow that under the provisions of section 33 of the lease, in view of the waiver of plaintiff, the defendants have a full and complete defense to plaintiff's action; the language relieving the lessees from further liability, as set out in said section, being that the said lessees upon such assignment by them "shall be forever released and discharged from any obligation arising and accruing under the conditions of this lease subsequent to the date of such assignment."

The next contention in this transaction was that the legal force and effect of the negotiations by the plaintiff, Mayer, and Warner, as receiver of the American State Bank, operated as a technical surrender. It is to be noted that all the defendants allege that the assignee of the lessee surrendered the lease, etc., and that the lessor accepted the same and went into possession thereunder.

The plaintiff alleges that the defendant Warner, receiver, pursuant to proper authority, "abandoned the lease" on or about December 1, 1921, and the premises covered thereby, and the plaintiff went into possession because of such abandonment. It stands in the record however that on March 4, 1922, the plaintiff commenced this action, the object of which was to secure a decree annulling the provisions of the lease in question and quieting his title against its provisions to the lots therein described, based on the abandonment.

The surrender of the leased premises by the tenant extinguishes the relation of landlord and tenant and ordinarily releases the tenant from liability for rent accruing thereafter. Though it is true, "in order that the attempted surrender shall release the tenant from further payment of rent, it must be accepted by the landlord." 36 C. J. 338, sec. 1146.

On the other hand, it is also true that "A tenant who

abandons the occupancy of the demised premises before the expiration of his lease without the consent of his landlord or other legal justification does not thereby exonerate himself from the payment of the rent for the residue of the term. * * * If, however, the landlord reenters upon the demised premises and deals with them in a way wholly inconsistent with a continuation of the tenancy, he cannot recover rents accruing after he took possession, but his right to rent which has accrued will not be affected." 36 C. J. 340, sec. 1152.

"A surrender of a lease by operation of law may be effected by any agreement between the parties that the term shall be terminated, which is unequivocally acted upon by both." *Wheeler v. Walden,* 17 Neb. 122. See, also, *Buffalo County Nat. Bank v. Hanson,* 34 Neb. 455.

With the above outlined situation existing in the pleading, it may fairly be said that the evidence and undisputed facts disclose that, though there was no formal written instrument executed tendering and conveying the leasehold possessed by the receiver to the plaintiff, yet orally a full and complete tender was made and delivery followed pursuant thereto to the lessor who at least took possession of all the property covered by the lease as owner thereof. The lessor admits these facts, but insists that he did not accept a surrender and that no formal surrender was therefore completed, but in his pleadings he alleges an abandonment, and after the transaction occurred, whether it be called an abandonment acquiesced in or a surrender accepted, the lessor instituted the present action. When this was done there could be no further questioning as to the lessor's attitude, and in fact the entire transaction must now be judged in the light of the commencement of these proceedings. If it be deemed a tender of a surrender, then the commencement of this action is conclusive evidence of the acceptance of the surrender by the lessor herein. 35 C. J. 1091, sec. 277. If it be deemed an abandonment, then in like manner the commencement of the proceedings to cancel the lease and quiet his title against the cloud created

thereby is a sufficient acquiescence to the abandonment. *Ellis v. Swan*, 38 R. I. 534. In either case the lease is wholly terminated, the covenants are at an end, and will support actions only for liabilities that were fixed at the time of the termination of the lease, and will not sustain demands that might thereafter accrue had the lease not been terminated. 35 C. J. 1095, sec. 286. In arriving at this conclusion it must be further conceded: "That a lessee by assigning all his interest in the term to an assignee empowers the assignee, if he so desires, to surrender to the lessor all or any part of the demised premises. He gives to his assignee the powers which he might himself have exercised, and as he himself might have surrendered part of the premises, he authorizes his assignee to do so." *Baynton v. Morgan*, 22 Q. B. (Eng.) 74.

In view of this conclusion, it must be said that the proposition of anticipatory breach of covenant is not in this case, nor in any manner presented by the facts before us. Therefore the case does not call for a discussion of the decisions cited in plaintiff's brief on that subject. The action of the trial court being right in denying to the plaintiff further relief after quieting his title as prayed, the judgment of the district court should be and is

                                             AFFIRMED.

Note—See 35 C. J. secs. 93, 94, 97, 274, 277, 286; 16 R. C. L. 844; 3 R. C. L. Supp. 604.