[Civ. No. 25915. Second Dist., Div. Three. Oct. 9, 1962.]

ERNEST FLYNN et al., Plaintiffs and Appellants, v. SUSIE P. MIKELIAN, Defendant and Respondent.

Carroll, Pares, Blakey & Battin and David Howard Battin for Plaintiffs and Appellants.

Y. B. Arsen for Defendant and Respondent.

FORD, J.—The primary question involved on this appeal is the nature of the rights of the plaintiffs, assignors of a lease of real property, at the time of the acts of the defendant lessor of which complaint is made. The appeal is from a judgment for the defendant.

On November 6, 1957, the defendant leased the premises involved to certain persons who thereafter assigned the lease to Zelman Soskin. On July 2, 1958, Soskin sold the business being operated on the property to the plaintiffs, Mr. and Mrs. Flynn, and assigned the lease to them. The lease contained a provision which was in part as follows: "Lessee shall not assign this lease . . . without the written consent of lessor first had and obtained, and a consent to one assignment . . . shall not be deemed to be a consent to any subsequent assignment. . . ." Such written consent to the assignment to the plaintiffs was obtained. In the document in which such consent was evidenced was an agreement executed by the plaintiffs whereby they did "agree to be bound by the terms, conditions and covenants [of the lease] . . ., the same as if originally executed by them as Lessees." On March 24, 1959, the plaintiffs sold the business to Clyde B. Wright and assigned the lease to him. In the document embodying the assignment was an agreement executed by Wright wherein he undertook "to assume and be bound by all of the terms and conditions of the said Lease which the Lessee therein agrees to be made and performed." The consent of the defendant lessor was expressed in the following language: "The undersigned Lessor hereby consents to the above Assignment of Lease to Clyde B. Wright waiving none of his and/or her rights thereunder as to the Lessee or the Assignee."

The nature of the controversy is indicated by the following findings of fact of the trial court: 1. The rent due on September 1, 1959, was not paid. 2. On September 16, 1959, the defendant lessor discovered that the premises had been vacated by Wright and the defendant entered the premises after having a door opened by a locksmith.[1] 3. Since September 16, 1959, the defendant has refused to deliver possession of the premises to the plaintiffs. 4. After September 16, 1959, the defendant removed the fixtures and equipment from the prem-

[1]In their opening brief the plaintiffs state: "At some period of time between August 31, 1959 and September 19, 1959 appellants [plaintiffs] learned that the fourth lessee, Wright, had *abandoned* the premises." (Emphasis added.)

ises and stored them for "the account of Soskin and/or Plaintiffs who then and there were the holders of chattel mortgages against said personal property."

The pertinent evidence before the trial court will be stated. Mr. Flynn, one of the plaintiffs, testified that he and his wife entered into possession of the premises about August 1958. The premises consisted of a "beer bar cafe" and living quarters. As part of their transaction of purchase, the Flynns executed a chattel mortgage in favor of Soskin on property used in the business. Thereafter Wright took possession (he having purchased the business from the Flynns and the lease having been assigned to him by them). On subsequent occasions the plaintiffs went to the premises to try to collect money which Wright owed to them on an obligation secured by a second chattel mortgage on the equipment of the business. On September 16, 1959, Mr. Flynn went there; the premises were closed and Wright was absent therefrom. The defendant was present and he talked to her. They watched the locksmith open the door and then they entered. Mr. Flynn did not notice the presence of any personal effects of Mr. Wright. When asked if he saw "any beer or any stock at all," Mr. Flynn's reply was that he saw a lot of empty bottles. He further testified that he asked the defendant how much money Wright owed her and she said that it was the amount of the rent for one month. After she stated that the only matter in which she was interested was the rent, he said that he would take care of it in a few days and he left. On cross-examination, Mr. Flynn testified that she did not say he could go back into the premises "in those words" and she did not say she would accept the rent from him. Thereafter the plaintiffs sent a check dated September 19, 1959, to the defendant for the sum of $220, the amount of the monthly rent. The defendant returned the check, enclosing it with a letter dated September 21 in which she stated that there had been some misunderstanding, that the rent had not been paid since August 1, 1959, and that "inasmuch as I have been required to repossess the property for nonpayment of rent, the lease has been forfeited."

In a letter dated October 7, 1959, and addressed to Mr. Soskin and the plaintiffs by an attorney acting on behalf of the defendant, it was stated that the communication was to notify the addressees "that because of failure to pay rentals for the above referred to property and the abandonment thereof by

the Lessee, the owner of the property was required to reenter the property and terminate the lease thereon." It was further stated that a new lease had been made and that if the furniture, fixtures and equipment were not removed within five days, the defendant would cause that property to be removed and stored "at the Lessee's expense and account." In a prior letter of September 29, 1959, addressed to the same persons, the attorney had stated that the personal property was being held as security for the payment of rent due since July 1, 1959, and "also for the payment of damages to the said real property by the tenants." Later, after such property had been stored in a garage, Mr. Soskin, the plaintiffs' mortgagee, took possession of it.

Mr. Flynn testified that his attorney obtained Wright's signature to a document dated September 19, 1959, part of which was as follows: "That the assignment of lease executed March 24, 1959, . . . on the above mentioned premises from [plaintiffs] . . . to CLYDE B. WRIGHT, is hereby cancelled and rescinded and is of no force and effect." Thereafter the plaintiffs demanded, in writing, that possession of the premises be given to them by the defendant.

The defendant was called as a witness by the plaintiffs pursuant to the provisions of section 2055 of the Code of Civil Procedure. She testified that on September 16, 1959, Mr. Flynn walked up to her and said that he knew that Mr. Wright had abandoned the place; Mr. Soskin had so informed him. He asked her if he could come back and operate the business and she told him that he could not. She testified in part as follows: "A. This is what I was saying. Mr. Flynn wasn't saying anything. I said, 'This is the kind of people you recommend for me, to tell me they are good people; that they will do good business; they are going to be good tenant.' And I said, 'This is what they give me in short time.' I said, I said, 'This is really bad.' I said, 'This is unfair.' I just started crying. . . . A. It was way after we went upstairs. We look[ed] all around the apartment where I really was deeply hurt more than ever. And he asked me if he—— 'Has he been paying the rent?' I said, 'No kind of money mean[s] anything on this kind of condition.' I said, 'Even if he'd pay rent,' I said, 'that don't mean nothing.' I said— he says if I let him to come back to run the place, everything will be all right. Right then, I tell Mr. Flynn, I said, 'Well, Mr. Flynn,' I said, 'Well, Mr. Flynn,' I said, 'I don't want you or your kind of people to deal with. Look at all the experience, all

what I got here,' I said." She further testified that after she removed and stored the fixtures and furnishings, Mr. Soskin and Mr. Flynn took the fixtures away. She said that the fixtures were not damaged in the course of being removed from her property.

A lease of the nature of that in the present case has two aspects. While it is primarily a conveyance to the lessee of an interest in the real property, it also is contractual in nature. Two distinct sets of rights and obligations are created, one being those arising out of the relation of landlord and tenant and based on privity of estate and the other being those arising out of the express provisions of the lease and based on privity of contract. (*Medico-Dental etc. Co.* v. *Horton & Converse,* 21 Cal.2d 411, 418 [132 P.2d 457]; *Goodman* v. *Jonas,* 142 Cal.App.2d 775, 790 [299 P.2d 424]; *Strecker* v. *Barnard,* 109 Cal.App.2d 149, 152 [240 P.2d 345].) ▮ By an assignment the lessee transfers all of his title and interest in the leasehold estate and retains no reversionary interest or right of reentry. (*Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 242 [73 P.2d 1163]; *Jeffers* v. *Easton, Eldridge & Co.,* 113 Cal. 345, 351-352 [45 P. 680]; *Blumenberg* v. *Myres,* 32 Cal. 93, 95 [91 Am.Dec. 560]; *Williams* v. *Hinckley,* 109 Cal.App. 574, 575 [293 P. 644]; *Weintraub* v. *Weingart,* 98 Cal.App. 690, 698-699 [277 P. 752]; see 30 Cal.Jur.2d, Landlord and Tenant, § 219, p. 366.) ▮ The assignor's privity of estate is thereby divested (see *Barkhaus* v. *Producers Fruit Co.,* 192 Cal. 200, 205 [219 P. 435]; *Mayer* v. *Dwiggins,* 114 Neb. 184 [206 N.W. 744, 746, 42 A.L.R. 1102, 1105]), although ordinarily his contractual obligations to the lessor are not released even though the lessor consents to the assignment and the assignee expressly assumes the obligations of the lease. (*De Hart* v. *Allen,* 26 Cal.2d 829, 832 [161 P.2d 453]; *Jordan* v. *Scott,* 38 Cal.App. 739, 741 [177 P. 504].) ▮ After the assignment there is privity of estate between the lessor and the assignee who enters the premises pursuant thereto. (*Fanta* v. *Maddex,* 80 Cal.App. 513, 516 [252 P. 630].)

Acts of a lessee may give rise to a surrender or abandonment of the leased premises. ▮ An abandonment occurs when the lessee vacates the premises with the intent to relinquish all rights therein. (See *Martin* v. *Cassidy,* 149 Cal.App.2d 106, 110-111 [307 P.2d 981]; *Swigert* v. *Stafford,* 85 Cal.App. 2d 469, 472 [193 P.2d 106]; 1 Cal.Jur.2d, Abandonment, §§ 2, 3, pp. 2-3; Joffe, *Remedies of California Landlord upon Abandonment by Lessee,* 35 So. Cal. L. Rev. 34, 35.) ▮ As said

in *Rognier* v. *Harnett,* 45 Cal.App.2d 570 [14 P.2d 654], at page 574: "... if the landlord accepts a surrender or abandonment of leased premises that has already taken place with the intent to terminate the lease, the lease is terminated as effectually as if there had been a valid agreement of surrender in advance." (See also *Bernard* v. *Renard,* 175 Cal. 230, 233-234 [165 P. 694, 3 A.L.R. 1076]; Joffe, *Remedies of California Landlord upon Abandonment by Lessee, supra,* 35 So. Cal. L. Rev. 34, 37.)

 Whether the evidence in the present case established the existence of the elements of an abandonment presented a question of fact. (See *Martin* v. *Cassidy, supra,* 149 Cal.App. 2d 106, 111-112.) Since the assignment passed all of the Flynns' title and interest in the leasehold estate to their assignee, Wright, there was no reason why subsequent conduct on his part could not result in a surrender or an abandonment of the premises. (See *Mayer* v. *Dwiggins, supra,* 114 Neb. 184 [206 N.W. 744, 748, 42 A.L.R. 1102, 1108].) The defendant lessor's testimony as to what occurred on the premises on September 16, 1959, as set forth hereinabove, was sufficient to sustain the inference that on that occasion she made known to Mr. Flynn her intention not to have any further dealings with him or with Mr. Wright. There was substantial evidence to support a determination not only that the assignee Wright had abandoned the premises[2] but that the defendant lessor had treated such abandonment as a surrender which she accepted with the intent thereby to terminate the lease. (See 30 Cal.Jur.2d, Landlord and Tenant, § 270.) The fact that in her letter of September 21, 1959, the defendant referred to repossession of the property "for nonpayment of rent" did not bar such a determination since her reentry was justified because of such abandonment and since she retook possession with the intent to bring the lease to an end. The question remains as to whether there were any other facts in the present case which precluded a termination of the lease which would otherwise occur under such circumstances.

 The plaintiffs, as assignors of the lease, retained no interest in the premises in the nature of a right of reentry which they could exercise in the event of an abandonment of the premises by Wright. (See *Kandis* v. *Pusch,* 86 Ind.App. 246 [155 N.E. 618, 619].) Consequently, there was no obliga-

---

[2]As noted in footnote 1 to this opinion, the plaintiffs have conceded that there was such an abandonment.

tion on the part of the defendant lessor to accept the check tendered by the plaintiffs instead of terminating the lease. Such determination is not altered by reason of the document executed by the Flynns and Wright which bears the date of September 19, 1959, a copy of the body of which is set forth in the footnote.[3] That instrument appears to have been intended to evidence the terms of a settlement between the Flynns and Wright of their respective rights and obligations. It was a reasonable inference that prior to the acquisition by the Flynns of any claim of rights pursuant to that document, the defendant lessor, for the purpose of bringing the lease to an end, had treated the acts of Wright as a surrender of the premises. Consequently, Wright had no interest in the premises to transfer. The use of the language of rescission could not revive the Flynns' former interest; the real nature of the instrument appears to be that of an attempted reassignment. "The law always respects form less than substance." (*Weintraub* v. *Weingart, supra,* 98 Cal. App. 690, 698.) The defendant was not required to recognize or to consent to any such attempted reassignment.

The judgment is affirmed.

Shinn, P. J., concurred.

Files, J., did not participate.

---

[3] "For Valuable Consideration and as part of the settlement between the parties hereto as to their respective rights in and to that certain business known as 'Green Oasis' at 6007 East Olympic Boulevard, Los Angeles 22, California, the parties hereto mutually agree as follows:

"(1.) That the assignment of lease executed March 24, 1959, assigning that certain lease dated November 6th, 1957, on the above mentioned premises from Ernest Flynn and Fabienne Flynn to Clyde B. Wright, is hereby cancelled and rescinded and is of no force and effect;

"(2) That escrow number BS 142-A opened on March 24, 1959, at the Security Escrow Company, 6554 Long Beach Boulevard, Long Beach, California, the bill of sale deposited by sellers therein, the $660.00 unsecured note and the chattel mortgage and note executed by Clyde B. Wright, buyer therein, in favor of sellers are hereby cancelled as of the date hereof, and in consideration of sellers retaining all monies heretofore paid by buyer, Clyde B. Wright, as stipulated damages, sellers will file for record a release of said chattel mortgage above mentioned.

"(3) Each of the parties hereto in consideration hereof do hereby waive any claim against each other arising out of said escrow and sale above mentioned."