Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:11 AM CST

BRICK DEVELOPMENT, APPELLANT, V. CNBT II LLC
AND THE CATTLE NATIONAL BANK &
TRUST CO., APPELLEES.

___ N.W.2d ___

Filed October 12, 2018.    No. S-17-865.

1. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Contracts: Real Estate: Leases.** Neb. Rev. Stat. § 36-105 (Reissue 2016) requires a signature by the party to be charged by the writing.

4. **Landlord and Tenant: Assignments.** A lessee, during his occupancy of the demised premises, holds both by privity of estate and of contract. Assignment of the lease by the lessee divests him of this privity of estate and transfers it to his assignee, who thereafter holds in privity of estate with the lessor.

5. **Landlord and Tenant: Assignments: Breach of Contract.** Privity of contract is not transmitted to the purchaser of the leasehold by an assignment of the lease alone; for the express covenants of the lessee contained in the lease will remain, during the continuance of the terms, obligatory upon the lessee. These obligations extend to breaches of covenant which have occurred after the assignment, and the lessee is not relieved therefrom by the mere acceptance of rent by the lessor from the person to whom such assignment has been made.

6. **Landlord and Tenant: Leases.** A landlord is not necessarily entitled to enforce all of the terms of a lease merely because there is privity of

estate; rather, such privity only gives the landlord the right to enforce covenants that run with the land.

7. **Contracts: Real Estate: Words and Phrases.** Generally, the three essential requirements for a covenant of any type to run with land are (1) the grantor and the grantee intend that the covenant run with the land, as determined from the instruments of record; (2) the covenant must "touch and concern" the land with which it runs; and (3) the party claiming the benefit of the covenant and the party who bears the burden of the covenant must be in privity of estate.

8. **Contracts: Real Estate: Landlord and Tenant: Liability.** The covenant to pay rent runs with the land, and a party in privity of estate with the landlord is directly liable to him for the installments accruing while that relation exists.

9. **Contracts: Real Estate: Liability.** Liability for covenants which run with the land cease with cessation of possession.

10. **Real Estate: Leases.** An express assumption of a real property lease requires specific affirmation by the assignee to bind itself to the lease obligations.

11. **Estoppel.** The doctrine of equitable estoppel is applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he or she has acquiesced or of which he or she has accepted any benefit.

12. **Contracts: Fraud: Estoppel.** Only where a party to a written contract within the statute of frauds induces another to waive some provision upon which he is entitled to insist and thereby change his position to his disadvantage because of that party's inducement will the inducing party be estopped to claim that such oral modification is invalid because not in writing.

13. **Contracts: Fraud.** Sophisticated business entities are charged with knowledge of the statute of frauds and cannot reasonably rely on oral statements or conduct.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Randall L. Goyette and Phoebe L. Gydesen, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P, for appellant.

John M. Guthery, Haleigh B. Carlson, and Derek A. Aldridge, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

An owner of one property seeks to bind a purchaser of another property to the terms of a 50-year lease agreement entered into between different parties. Because there is no privity of contract and the purchaser did not expressly assume the lease, the statute of frauds bars the owner's claim for breach of contract. We further conclude that equitable estoppel does not prevent the purchaser from raising the statute of frauds as a defense and that there is no genuine issue of material fact. We affirm.

## BACKGROUND

### Parking Lot Lease

In 1978, D. William Smith and Joyce Smith owned a parking lot located on N Street in Lincoln, Nebraska. Two Twenty Enterprises, L.L.C. (TTE), owned an office building located on 17th Street west of the parking lot. The Smiths, as lessors, entered into a lease agreement with TTE, as lessee, to lease the parking lot to TTE (parking lot lease). The original term of the lease was for 50 years.

One section of the parking lot lease allowed the lessee to encumber the leasehold interest by mortgage or other proper instrument. The lease provided in part:

> The execution of any such mortgage or other instrument, or the foreclosure thereof, or any sale thereunder, . . . shall not be held as a violation of the terms or conditions hereof, or as an assumption by the holder of such indebtedness of the obligations hereof. No such encumbrance, foreclosure, conveyance, or exercise of right shall relieve LESSEE of its liability hereunder.

The parking lot lease contained several other sections pertinent to this appeal. One section authorized assignment of

the lease. A different section set forth a right of first refusal in the event that either the lessor or the lessee decided to sell its property or the lessee wished to transfer its interest in the leasehold. And under a rent escalation clause, the rent was to be adjusted in the 11th year and every 5th year thereafter.

## Lease With DAS

On May 24, 2004, TTE entered into a lease with the Nebraska Department of Administrative Services (DAS) on behalf of a tenant. TTE agreed to lease space at the office building and to provide parking stalls in the parking lot for use by the tenant's clients. The lease was set to end on August 30, 2015.

## Purchase and Assignment

In 2006, Raasch Enterprises, Inc. (Raasch), purchased the office building from TTE. The purchase was financed by a loan from The Cattle National Bank & Trust Co. (the Bank), and Raasch executed a deed of trust to secure the loan. The deed of trust, signed only by Raasch, stated that Raasch "irrevocably assigns, grants and conveys" to the Bank "all the right, title and interest" in existing or future leases "for the use and occupancy of the Property." The deed of trust identified the "Property" as the office building. The deed of trust did not contain any language concerning the parking lot parking property; nor did it identify the parking lot lease as an encumbrance.

On the same day, TTE assigned the parking lot lease to Raasch. Raasch accepted the assignment and assumed the liabilities and duties to perform the terms and conditions of the parking lot lease. The Smiths gave their written consent to the assignment.

## Default and Sale of
## Office Building

After Raasch failed to timely pay indebtedness secured by the deed of trust, the Bank issued a notice of default. As a

result of Raasch's default, a trustee's sale was arranged. The published notice of trustee's sale stated that the property "will be sold subject to any and all . . . leases, subleases, assignments, amendments, and other rights and interests, if any, which are specifically announced by the Trustee at the sale." According to the sale announcement, the real estate would be subject to the parking lot lease, the 2006 assignment of lease, and the lease between TTE and DAS.

CNBT II LLC (CNBT), whose sole member is the Bank, purchased the office building at the trustee's sale. In February 2012, the Bank filed a trustee's deed conveying the office building to CNBT. In conformity with the sale announcement, the deed stated that the property transfer was "subject to" the parking lot lease along with the 2006 assignment of the lease and the lease between TTE and DAS. The deed further stated that the transfer was subject to those leases "provided that the Grantee is not assuming any liabilities, and shall not be liable, for any act or omission of the landlord or any other party under, without limitation, any of the Leases." The president of the Bank signed the deed. CNBT used the parking lot and paid rent to the Smiths.

### BRICK BECOMES LESSOR

In December 2012, the Smiths conveyed to Brick Development (Brick), via a quitclaim deed, the parking lot. Brick is the successor in interest to the Smiths as lessor under the parking lot lease.

### PROPOSED SALE OF OFFICE BUILDING

In 2013, CNBT received an offer to purchase the office building. It gave notice to Brick of the offer "[p]ursuant to" the right of first refusal interest contained in the parking lot lease. The notice stated, "Per the lease you have 30-days from the date of this notice to notify us of your intent to purchase the Property on the same terms and conditions as the Buyer . . . ."

Brick notified CNBT of a concern. Brick stated that it had "not been able to find any language in the Real Estate Purchase Agreement which refers to the Buyer's assumption of the existing lease on the parking lot . . . which language [Brick] would have expected to see as a Buyer's Condition of Closing." CNBT's president responded: "I believe the terms of the previous lease on the parking lot carry over to . . . the new owner. If you would like us to get a written agreement to this affect [sic] as a condition of closing we can do this."

Brick later sent a letter to CNBT along with a proposed assignment of lease between CNBT and the buyer. The proposed assignment had been signed by Brick, as lessor, giving its consent, and Brick requested that CNBT sign it. The letter further stated, "In the event the proposed sale does not close, then we will of course continue to look to CNBT . . . as successor-in-interest from Raasch . . . to fulfill the obligations of the [parking lot lease]." Ultimately, the sale did not occur.

### OTHER COMMUNICATIONS BETWEEN BRICK AND CNBT

In January 2014, Brick sent a letter to the Bank and CNBT "to both reconcile unpaid previously scheduled monthly rental increases and inform [them] of the new monthly lease payment for the five year period of September of 2013 through September of 2018 for the parking lot." The letter pointed out that under the parking lot lease, the monthly lease payment was scheduled to increase every 5 years beginning in 1988, but that the increase to begin in September 2008 had not been implemented. Brick also sent an email to counsel for CNBT and the Bank. It stated, in part, "[W]e'd like to get something on record that your client has assumed, or has accepted an assignment of, the [parking lot lease]."

In February 2014, Brick filed with the register of deeds a notice of lease and right of first refusal. The document contained Brick's signature only. The purpose of the notice was to

confirm that the parking lot lease "is currently in full force and effect, and has not been modified other than by conveyance of the interest of the original Lessor to the current owners of the Property, and from the original Lessee . . . to CNBT . . . , the current Lessee and owner of [the office building]."

On August 7, 2015, CNBT sent Brick a notice of termination and cancellation of the parking lot lease effective September 10. There is no dispute that CNBT paid rent to Brick through September 10.

## Pleadings

Brick sued CNBT and the Bank. Brick alleged that as of February 2012, CNBT assumed the parking lot lease as lessee. According to Brick, CNBT had paid rent and taxes, had maintained the property, and had complied with the right of first refusal terms of the lease. Brick claimed that CNBT's actions were "tantamount to and act as an assumption of the [lease]." Brick also alleged that CNBT was equitably estopped from asserting that it was not contractually bound as the lessee because CNBT acquiesced to or accepted a benefit under the lease.

CNBT responded that it did not receive an assignment or transfer of interest by Raasch and that it did not assume the parking lot lease. CNBT and the Bank both alleged that the conveyance stated CNBT was not assuming any liabilities under the lease. They also both alleged that Brick's claims were barred by the statute of frauds, including Neb. Rev. Stat. §§ 36-105 and 36-202 (Reissue 2016). CNBT claimed that its use of the parking lot property was on a month-to-month basis from the time that it became the owner of the office building.

CNBT, the Bank, and Brick each moved for summary judgment.

## District Court's Decision

In resolving the motions for summary judgment, the district court first considered whether the trustee's deed to CNBT

satisfied the statute of frauds. It noted that neither Brick nor CNBT was a party to the trustee's deed and that it was signed by the Bank only. The court determined that "the documents do not show CNBT's assumption of the obligations of the [parking lot lease]."

Next, the court addressed whether CNBT was estopped from asserting the statute of frauds defense. The court found no evidence that CNBT induced Brick to believe that CNBT had assumed future obligations of the parking lot lease. It found that Brick qualified as a sophisticated business entity and that sophisticated business entities are charged with knowledge of the statute of frauds. The court determined that any reliance by Brick that CNBT had assumed the obligations under the lease was unreasonable. The court concluded that CNBT's liability ceased with its cessation of possession and that thus, it was not liable for its obligations as a tenant beyond September 10, 2015. The court sustained CNBT's and the Bank's motions for summary judgment.

Brick appealed, and we moved the case to our docket.[1]

## ASSIGNMENTS OF ERROR

Brick assigns two errors. First, Brick alleges that the court erred in denying its motion for summary judgment for several reasons. Second, Brick claims that the court erred in granting CNBT's and the Bank's motions for summary judgment.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in the

---

[1] See Neb. Rev. Stat. § 24-1106 (Supp. 2017).

[2] *Jordan v. LSF8 Master Participation Trust*, 300 Neb. 523, 915 N.W.2d 399 (2018).

light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3]

## ANALYSIS

### Statute of Frauds

Brick argues that the district court erred by concluding that CNBT and the Bank did not assume the parking lot lease and that the statute of frauds precluded the lease's enforcement. Under Nebraska's statute of frauds, "Every contract for the leasing for a longer period than one year . . . shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease . . . is to be made."[4]

In this case, a relationship complying with the statute of frauds developed a new wrinkle: The 50-year parking lot lease between the Smiths and TTE complied with the statute of frauds. So, too, did TTE's assignment of the lease to Raasch. And at the time of the assignment, TTE also conveyed the office building to Raasch. Thus, for approximately 6 years, Raasch owned the office building and, as assignee of the parking lot lease, was entitled to use the nearby parking lot. The statute of frauds problem crept in with Raasch's executing the deed of trust to secure the loan from the Bank and the subsequent trustee's sale of the property.

[3] Section 36-105 requires a signature by the party to be charged by the writing.[5] Brick seeks to have CNBT bound by the parking lot lease. But as Brick forthrightly conceded at oral argument, there is no direct writing between Brick and CNBT that is also signed by CNBT. And neither the deed of trust nor the trustee's deed is signed by CNBT.

---

[3] *Id.*

[4] § 36-105.

[5] See *Walters v. Sporer*, 298 Neb. 536, 905 N.W.2d 70 (2017).

Brick directs us to the trustee's deed, which stated that the property was "subject to" the parking lot lease. However, the deed of trust contains no reference to the parking lot property or to the parking lot lease. A deed of trust is a mortgage.[6] In the context of mortgages, we have stated that a mortgage foreclosure sale transfers to the purchaser every right and interest of all parties to the foreclosure suit in the mortgaged property.[7] It follows then that a trustee's sale transfers to the purchaser every right and interest of the parties to the property described in the deed of trust. And because the deed of trust concerned the office building only and not the parking lot, we reject Brick's contention that the parking lot lease fell within the deed of trust's clause where Raasch assigned to the Bank "all the right, title and interest in . . . existing or future leases . . . for the use and occupancy of the Property."

We briefly digress to distinguish *Walters v. Sporer*.[8] In that case, the original grantor sought to enforce a right of first refusal contained in a warranty deed. We stated that the right of first refusal was within Neb. Rev. Stat. § 36-103 (Reissue 2016) of the statute of frauds, which required a signature by the party to be charged by the writing. But we determined that acceptance of the deed satisfied the statute of frauds. We reasoned that "[t]o hold otherwise would be a misapplication of the statute of frauds by inequitably allowing the [original grantees] to retain the benefit of the deed while escaping a clear statement of intent on its face."[9] But in the instant case, there is no such clear statement of intent. The deed of trust did not specifically mention the parking lot lease. Thus, there is no inequity in not binding the grantee to the terms of the lease.

---

[6] *Fiske v. Mayhew*, 90 Neb. 196, 133 N.W. 195 (1911).

[7] See *Clements v. Doak*, 140 Neb. 265, 299 N.W. 505 (1941).

[8] *Walters v. Sporer, supra* note 5.

[9] *Id.* at 558, 905 N.W.2d at 86.

In an attempt to circumvent the statute of frauds, Brick focuses on CNBT's actions. For over 3 years, CNBT made monthly rent payments for use of the parking lot, including rental increases called for in the parking lot lease. CNBT also reaped the benefits of the 2004 lease that TTE entered into with DAS and that expired on August 30, 2015. And CNBT complied with the right of first refusal language contained in the parking lot lease. Brick points to language in cases from other jurisdictions stating that possession plus paying rent gives rise to a presumption of an assignment sufficient to satisfy the statute of frauds.[10] But those jurisdictions also make clear that an assignee will be liable for covenants that run with the land only while in privity of estate.[11]

[4,5] A lease of real property implicates principles of both privity of contract and privity of estate. A lessee, during his occupancy of the demised premises, holds both by privity of estate and of contract. Assignment of the lease by the lessee divests him of this privity of estate and transfers it to his assignee, who thereafter holds in privity of estate with the lessor.[12] Privity of contract, however, is not transmitted to the purchaser of the leasehold by an assignment of the lease alone; for the express covenants of the lessee contained in the lease will remain, during the continuance of the terms, obligatory upon the lessee. These obligations extend to breaches of covenant which have occurred after the assignment, and the lessee is not relieved therefrom by the mere acceptance of rent by the lessor from the person to whom such assignment has been made.[13]

---

[10] See, *Gateway I Group v. Park Ave. Physicians*, 62 A.D.3d 141, 877 N.Y.S.2d 95 (2009); *8182 Maryland Associates v. Sheehan*, 14 S.W.3d 576 (Mo. 2000); *Abbott v. Bob's U-Drive et al*, 222 Or. 147, 352 P.2d 598 (1960).

[11] See, *Beltrone Marital Trust v. Lavelle and Finn*, 22 A.D.3d 936, 803 N.Y.S.2d 211 (2005); *8182 Maryland Associates v. Sheehan, supra* note 10; *Abbott v. Bob's U-Drive et al, supra* note 10.

[12] *Mayer v. Dwiggins*, 114 Neb. 184, 206 N.W. 744 (1925).

[13] *Id.*

[6-9] If privity of estate is present, a party is typically liable only for covenants that run with the land. A landlord is not necessarily entitled to enforce all of the terms of a lease merely because there is privity of estate; rather, such privity only gives the landlord the right to enforce covenants that run with the land.[14] Generally, the three essential requirements for a covenant of any type to run with land are (1) the grantor and the grantee intend that the covenant run with the land, as determined from the instruments of record; (2) the covenant must "'touch and concern'" the land with which it runs; and (3) the party claiming the benefit of the covenant and the party who bears the burden of the covenant must be in privity of estate.[15] The covenant to pay rent runs with the land, and a party in privity of estate with the landlord is directly liable to him for the installments accruing while that relation exists.[16] Liability for covenants which run with the land cease with cessation of possession.[17]

[10] Privity of contract does not run with the land. Privity of contract is not transmitted to the purchaser of a leasehold.[18] Thus, unless a new tenant assumes the lease, the tenant will not be bound under privity of contract.[19] An express assumption of a real property lease requires specific affirmation by the assignee to bind itself to the lease obligations.[20] CNBT has not specifically stated, orally or in writing, that it agreed

---

[14] See *Excel Willowbrook v. JP Morgan Chase Bank*, 758 F.3d 592 (5th Cir. 2014).

[15] *Regency Homes Assn. v. Egermayer*, 243 Neb. 286, 296, 498 N.W.2d 783, 789 (1993).

[16] *Hogg v. Reynolds*, 61 Neb. 758, 86 N.W. 758 (1901).

[17] See *Kelly v. Tri-Cities Broadcasting, Inc.*, 147 Cal. App. 3d 666, 195 Cal. Rptr. 303 (1983).

[18] See *Mayer v. Dwiggins, supra* note 12.

[19] See *Kelly v. Tri-Cities Broadcasting, Inc., supra* note 17.

[20] *Landlord v. Farmers & Merchants*, 14 Cal. App. 5th 992, 222 Cal. Rptr. 3d 435 (2017).

to be bound by the parking lot lease. Because CNBT did not expressly assume the lease, it is not bound by the obligations contained therein, other than covenants which run with the land during CNBT's occupancy. We conclude that paying rent while in possession is not an exception to the requirement under the statute of frauds that an assumption of a lease for a period greater than 1 year must be in writing.

### Equitable Estoppel

[11] Brick assigns that the district court erred in determining that equitable estoppel did not apply. It contends that CNBT should be estopped from relying on the statute of frauds as a defense. The doctrine of equitable estoppel is applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he or she has acquiesced or of which he or she has accepted any benefit.[21] Brick contends that CNBT both acquiesced to and received benefits as a lessee under the parking lot lease agreement and should not now be allowed to disclaim it.

[12,13] Equitable estoppel does not apply under the circumstances. Only where a party to a written contract within the statute of frauds induces another to waive some provision upon which he is entitled to insist and thereby change his position to his disadvantage because of that party's inducement will the inducing party be estopped to claim that such oral modification is invalid because not in writing.[22] There is no evidence that CNBT induced Brick to believe that CNBT assumed the long-term obligations of the lease or that Brick changed its position to its disadvantage in reliance upon such a belief. Further, the district court found that Brick qualified as a sophisticated

---

[21] *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018).

[22] *Fast Ball Sports v. Metropolitan Entertainment*, 21 Neb. App. 1, 835 N.W.2d 782 (2013). See *Farmland Service Coop, Inc. v. Klein*, 196 Neb. 538, 244 N.W.2d 86 (1976).

business entity, and Brick does not challenge this finding on appeal. Sophisticated business entities are charged with knowledge of the statute of frauds and cannot reasonably rely on oral statements or conduct.[23] Because Brick was a sophisticated business entity, CNBT is not estopped from raising the statute of frauds as a defense.

## No Genuine Issue

Finally, Brick argues that an issue of fact remained regarding whether CNBT and the Bank intended to assume the assignment of the parking lot lease by continuing to rent the parking lot and complying with all provisions of the lease agreement. But there is no genuine issue of material fact that CNBT never signed anything expressly assuming the obligations of the parking lot lease. Because the statute of frauds bars Brick's claims, CNBT's conduct and intent are irrelevant.

## CONCLUSION

Because there is no privity of contract and CNBT did not expressly assume the lease, Brick's breach of contract claim is barred by the statute of frauds. We further conclude that CNBT is not estopped from raising the statute of frauds as a defense. And because there was no genuine issue of material fact, the district court did not err in granting summary judgment in favor of CNBT. We affirm.

Affirmed.

Stacy, J., not participating.

---

[23] See *168th and Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945 (8th Cir. 2007).